IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 9, 2014

Docket No. 33,566

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

LETICIA T., a child,

      Defendant-Respondent.

ORIGINAL PROCEEDINGS ON CERTIORARI
William C. Birdsall, District Judge

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Petitioner and Respondent

Jorge A. Alvarado, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Respondent and Petitioner

OPINION

MAES, Justice.

{1}    This case presents the issue of warrantless vehicle searches after reported use of a weapon from said vehicle. Here, officers were dispatched in response to reports of an armed subject pointing a rifle at several people from the window of a light beige or tan vehicle. After Defendant Leticia T. (Child) and children passengers were removed and detained, the officers conducted a warrantless search of the interior and trunk of the vehicle. The district court held that the warrantless search was justified by exigent circumstances. The Court of Appeals reversed the district court, ruling that the possibility of a person hiding in the trunk

of a vehicle does not constitute exigency. *State v. Leticia T.*, 2012-NMCA-050, ¶ 14, 278 P.3d 553.

**{2}**    We reverse the Court of Appeals. We hold that when police officers have probable cause and exigent circumstances to believe that an armed subject pointed a rifle at other individuals from a vehicle, officers may search the cab and the trunk of that same vehicle for the rifle.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

**{3}**    Farmington police officers were dispatched to a Sonic Drive-In in response to reports of an armed subject pointing a "long gun" at several people from the window of a light beige or tan vehicle. At the suppression hearing, one of the responding officers, Officer Coate, testified that a felony stop procedure was conducted.Before any commands were given, Child exited the vehicle from the passenger side. Officer Coate testified that Child was placed into custody, slipped out of her handcuffs, and struck Officer Swenk in the mouth. Officer Swenk was bleeding from his nose and upper lip but ultimately restrained Child with handcuffs and into the back of the squad car.

**{4}**    Two other juveniles also exited the vehicle. Officer Coate testified that once the cab of the vehicle was clear, the officers had a duty to check the trunk of the vehicle for any subjects that may be hiding. Officer Coate testified that on numerous occasions he had discovered a subject hiding in the trunk of a vehicle attempting to avoid detection by police. Officer Rahn testified that officers are trained to check the trunk during a felony stop because it can easily conceal a person. Officer Coate believed it was possible that a person was hiding in the trunk because there were reports of a person pointing a rifle from the window of the vehicle, however, a rifle was not found in the cab of the vehicle. Officer Coate also testified that he observed the vehicle moving back and forth prior to Child exiting the vehicle, which was consistent with people moving around in a vehicle. The dark tint on the windows prevented Officer Coate from seeing what was happening inside the vehicle. The officers "made sure there were no other subjects in [the] vehicle" before they "went in close and confirmed it was empty." Officer Coate was concerned that the armed individual was still inside the vehicle, and the only place left to hide was the trunk.

**{5}**    Sergeant Simmons and Officer Smith were also at the scene.Officer Smith testified that she was the canine officer on scene and she had sent her dog to see if anyone else was inside the vehicle. Officer Smith testified that her dog is trained in all patrol activities including finding people and apprehending combative suspects. The dog failed to make a complete check of the vehicle due to the presence of onlookers so the officers instituted a secondary check. Sergeant Simmons testified that officers are trained to check the trunk of a vehicle in order to prevent a possible ambush. Sergeant Simmons opened the trunk, saw that the trunk was clear of any person and then observed the weapon used for the aggravated assault lying in the trunk in plain view.

2

**{6}** Child was charged by criminal information with aggravated battery upon a peace officer with a deadly weapon and aggravated assault with a deadly weapon on March 16, 2010. Child filed a motion to suppress evidence from the search of the trunk, arguing that none of the recognized exceptions justified the warrantless search. In response, the State argued that the search was valid as a protective sweep and exigent circumstances did exist. The district court denied Child's motion on grounds the that exigent circumstances validated the search. The district court denied the motion to suppress in two orders. In its amended order, the court stated:

> Based upon analysis of the following, *State v. Garcia*, 2005-[NMSC]-017, 138 N.M. 1, 116 P.3d 72, and *State v. Duffy*, 1998-NMSC-014, 126 N.M. 132, 967 P.2d 807, among others, the [c]ourt finds that exigent circumstances justified the search of the trunk for the firearm that had not yet been located in the vehicle but had been seen by witnesses just prior to the stop.

**{7}** Child entered into a conditional plea and disposition agreement and reserved the right to appeal the district court's denial of her motion to suppress the evidence. Child agreed to a commitment to the Children, Youth, and Families Department (CYFD) for a period not to exceed two years.

**{8}** The Court of Appeals reversed the district court's denial of the motion to suppress, holding that there was an absence of "a particularized showing of exigent circumstances" as required by the New Mexico Constitution. *Leticia T*., 2012-NMCA-050, ¶ 13 (internal quotation marks and citation omitted). The Court also ruled that the State's protective sweep exception argument failed because the evidence presented did not establish specific and articulable facts necessary to justify such a search. *Id.* ¶ 15.

**{9}** The State appealed to this Court pursuant to Article VI, Section 3 of the New Mexico Constitution; NMSA 1978, Section 34-5-14 (1972); and Rule 12-502 NMRA. On appeal the State argues that (1) exigent circumstances justified a warrantless search of the entire vehicle and (2) the protective sweet exception also justified a warrantless search of the trunk because it was possible that an armed subject was hiding therein. Because we hold that exigent circumstances justified the warrantless search of the vehicle, we do not address the State's protective sweep argument.

## II.    STANDARD OF REVIEW

**{10}** This Court's review of a motion to suppress involves questions of law and fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. The application of the law to the facts is reviewed de novo. *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442. However, a reviewing court does "not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses." *Urioste*, 2002-NMSC-023, ¶ 6. "We review the factual basis of the court's ruling for substantial evidence, deferring to the district court's view of the evidence." *State v. Williams*, 2011-

3

NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307.

## III.    DISCUSSION

**{11}**    New Mexico's Constitution provides more protection against unreasonable searches and seizures than the Fourth Amendment in automobile cases. *State v. Cardenas-Alvarez,* 2001-NMSC-017, ¶ 15, 130 N.M. 386, 25 P.3d 225. Article II, Section 10 of the New Mexico Constitution states, in relevant part, "no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized." We established in *State v. Gomez* that New Mexico has consistently "expressed a strong preference for warrants." 1997-NMSC-006, ¶ 36, 122 N.M. 777, 932 P.2d 1. "[O]ur courts have historically recognized that it is not always reasonable to require a warrant and have developed a number of well-established exceptions to the warrant requirement." *State v. Rowell*, 2008-NMSC-041, ¶ 11, 144 N.M. 371, 188 P.3d 95. Among the recognized exceptions to the warrant requirement are exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit. *See State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. "[T]he State bears the burden of proving reasonableness." *Rowell*, 2008-NMSC-041, ¶ 10 (internal quotation marks and citation omitted).

**{12}**    A warrantless entry into a vehicle under the exigent circumstances exception requires probable cause plus exigent circumstances. *See State v. Ruffino*, 1980-NMSC-072, ¶ 3, 94 N.M. 500, 612 P.2d 1311. Probable cause exists when "seizable evidence exists at a particular location before a search warrant may issue." *State v. Williamson*, 2009-NMSC-039, ¶ 14, 146 N.M. 488, 212 P.3d 376. Probable cause is determined on a case-by-case basis. *See State v. Aull*, 1967-NMSC-233, ¶ 19, 78 N.M. 607, 435 P.2d 437. We have defined exigent circumstances as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Gomez*, 1997-NMSC-006, ¶ 39 (internal quotation marks and citation omitted). To determine if exigent circumstances exist, the court must decide "whether, on the basis of the facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary." *State v. Valdez,* 1990-NMCA-134, ¶ 14, 111 N.M. 438, 806 P.2d 578 (internal quotation marks and citation omitted). Exigencies must be known to an officer prior to or at the time of entry. *State v. Attaway*, 1994-NMSC-011, ¶ 28, 117 N.M. 141, 870 P.2d 103. This inquiry is objective. *Gomez,* 1997-NMSC-006, ¶ 40.

**{13}**    The State argues that it proved that the officers had probable cause to believe an offense had been committed based on dispatch's report that the suspects had aimed a rifle at bystanders from the window of a beige vehicle. The State asserts that several officers arrived at the location of the reported incident and found a vehicle matching that description; therefore they had probable cause to believe that someone in the vehicle was armed and had just assaulted individuals with a rifle. The State further contends that exigent circumstances existed because the situation required immediate action to prevent imminent danger to life

4

or serious harm, or to forestall the imminent escape of a suspect or the destruction of evidence. The officers took immediate action by clearing the vehicle including the trunk. Citing *Garcia*, the State argues that this Court has already allowed officers to conduct a reasonable and limited search of a car for weapons, even after the suspects are removed from the vehicle. 2005-NMSC-017, ¶ 32.

**{14}** Child argues that while the officers may have had probable cause to stop the vehicle and detain the passengers, once the children were out of the car, the officers needed probable cause to conduct a full-on search of the vehicle. Child asserts that the officers should have evaluated whether exigent circumstances existed after Child and the other suspects were handcuffed and detained. Child contends that exigent circumstances did not exist because: the canine cleared the vehicle; the officers did not move any of the onlookers back from the scene, indicating there was a lack of concern for public safety; and although Child became combative at one point, she was ultimately detained in the back of a police vehicle. Child further argues that both cases that the district court relied on are distinguishable from this case. First, unlike *Garcia*, no officer in this case saw a firearm in plain sight and within arm's reach of Child nor was the trunk a readily accessible area. Child asserts that *Duffy* is equally distinguishable because Child did not attempt to flee therefore there was never a paradigmatic exigent circumstance that justified the officers' warrantless search. Despite the fact that *Garcia* and *Duffy* are distinguishable from this instant case, nonetheless, based on the facts of this case exigent circumstances existed to justify the warrantless search.

**{15}** We hold that this case is controlled by *Rowell*, 2008-NMSC-041. In *Rowell*, the defendant was stopped for speeding while on school property. *Id.* ¶ 2. During the investigation, the officer saw a baggie of marijuana in plain view, which he took from the defendant. *Id.* After handcuffing the defendant, the officer asked if the defendant had any guns, knives, or other dangerous weapons. *Id.* The defendant eventually told the officer that there was a shotgun in the back seat of his car. *Id.* The officer secured the defendant in the patrol car and then searched the defendant's car, seizing from the passenger compartment "a loaded shotgun, a loaded revolver, a two-foot long wooden club, a straight-blade knife, nineteen shotgun shells, two box-cutter blades, and a package of Zig-Zag rolling papers," and "[a] multi-tool knife . . . from the trunk." *Id.* ¶ 3.

**{16}** We concluded in *Rowell* that probable cause existed as soon as the defendant admitted that he had a shotgun in his car because it is a felony to bring a deadly weapon onto school property. *Id.* ¶ 27. Regarding exigent circumstances, we concluded that it was not objectively unreasonable for the officer to act immediately to remove the weapons from the defendant's car even though at that point the defendant lacked personal access to his vehicle. *Id.* ¶ 33. Our rationale was that the deadly weapons in the defendant's car remained accessible to students and others until the officer took prompt steps to secure the weapons. *Id.* ¶ 34. Therefore, once the officer

> knew that there was at least one firearm in the car, he was justified in
> searching every place inside where a weapon and its explosive ammunition

5

might be located. [The officer] was not obligated to stop his search as soon as he found the first weapon. Finding an additional loaded firearm, other weapons and spare ammunition only served to enhance the good cause the officer had to continue his search of both the passenger compartment and the trunk to make sure he would secure the entire arsenal of weapons.

*Id.* ¶ 35.

**{17}** In *Rowell*, the mere possession of a gun on school property constituted a crime. *In this case* the officers were advised that an occupant in a tan car was pointing a rifle at a crowd of people, which gave rise to probable cause to believe that an assault with a deadly weapon had occurred. In *Rowell*, we assumed that carrying a gun on school property was dangerous. *In this case* the eyewitness accounts of someone pointing a rifle at a group of people is direct evidence of dangerous use of a deadly weapon. After the officers arrived at the scene, Child was handcuffed and secured in a patrol vehicle. The other occupants of the tan car were also secured in patrol vehicles. Thus, as in *Rowell*, Child and the other occupants no longer had access to any deadly weapons in the car. Also similar to *Rowell*, there was a group of onlookers who had gathered near where the car was located.

**{18}** Granted, in *Rowell*, the defendant stated that there was a gun in his vehicle. *Here*, Child did not make such an admission but those who reported the felony said that an occupant of the tan car was pointing a rifle at a crowd of people. Therefore, the officers in both cases had information that a gun was in the car, albeit the information came from different sources. In *Rowell*, we held that the officer could search the trunk of the car, even though he retrieved deadly weapons from the passenger compartment, and the defendant had been secured in the police vehicle. The important consideration in *Rowell* was the presence of others at the scene. In this case the canine officer testified that her dog failed to make a complete check for people inside the vehicle because of the presence of onlookers. *In both cases* the officers had probable cause to believe that a gun used in the commission of a crime was in a vehicle accessible to a group of people, even if it was not accessible to the defendant or Child.

**{19}** We affirm the district court and agree that the officers had probable cause to believe that a gun used in the commission of a crime was in the vehicle accessible to a group of people, even if it was not accessible to Child. We hold that it was reasonable for the officers to believe that exigent circumstances existed. We recognize that an individual in a car with a weapon, by itself, does not create exigent circumstances. And under our holding, unless the gun is evidence of a crime, an officer cannot search a vehicle following an arrest based on an assumption or a hunch that there is a deadly weapon in the car or merely when an officer sees a gun in a car. *But see*, *State v. Ketelson*, 2011-NMSC-023, ¶ 27, 150 N.M. 137, 257 P.3d 957 (holding that it is constitutionally permissible to temporarily seize a firearm from an automobile during the course of a stop to 'ensure that it was beyond the reach of any of the occupants' out of concern for officer safety.)

**{20}**     In support of our holding we note that in those state jurisdictions, like New Mexico, which require not only probable cause but exigent circumstances to conduct a search of a car, courts have held that exigent circumstances existed in situations where police have been unable to locate a known or reported weapon. For example, in *Commonwealth v. Stewart*, the court found exigent circumstances in a situation where the police were unable to find a firearm after stopping a car with probable cause to believe the occupants had been involved in a shootout. 740 A.2d 712, 718 (Pa. Super. Ct. 1999) Specifically,

> [w]hen the officers took the defendants into custody and patted them down for security purposes, they did not find any guns on the defendants' persons. The officers were concerned that the defendants threw the gun out of the car and into the street between the time of the shooting and the time of apprehension by the police. If that were the case, then the police would have had to organize a search of the entire route that the defendants had traveled. The situation arose during a Saturday morning, and people at after-hours nightclubs were already coming out into the streets. There was a risk that a third person would be hurt when coming across the gun, which may have been an automatic that was still cocked and ready to fire.

*Id.*

**{21}**     The court held that "[t]he officers reasonably concluded that the guns were either disposed of by the defendants in the street or were hidden in the car," and that "[t]he officers and the public were in danger if the weapons were not recovered; thus, there was a need for immediate police action." *Id.* at 719. *See also State v. Jones*, 2013 WL 560837 (N.J.Super.A.D. 2013) (unreported) (citing New Jersey precedents holding that exigent circumstances are required for a warrantless automobile search, and that "[e]xigent circumstances exist 'when inaction due to the time needed to obtain a warrant will create a substantial likelihood that the police or members of the public will be exposed to physical danger or that evidence will be destroyed or removed from the scene'"). Likewise in this case, to protect the public from the firearm and its wielder and to prevent the loss of the firearm as evidence, the police had to know immediately whether the firearm was or was not located in the trunk of the car they had seized.

**{22}**     Further, the action of the officers in this case was not beyond the range of constitutionally reasonable choices for the on-scene officers to make. There are two particularly appropriate cautions expressed in *Gomez*. First, "[i]f reasonable people might differ about whether exigent circumstances existed, we defer to the officer's good judgment." 1997-NMSC-006, ¶ 40. When reasonable people on three courts have *reasonably* differed on the exigent circumstances issue, that would seem to call for deference. Second, we should not let our preference for warrants result in overriding an officer's on-the-scene decision to act immediately where immediate action is one of the lawful options. *See id.* ¶ 43 ("[W]hile [taking the time to get a search warrant] would have been acceptable and even desirable, failure to have done so does not affect our ruling that it was reasonable for [the

officer] to search the vehicle under circumstances giving rise to a reasonable belief that exigencies required an immediate search.")

## IV.    CONCLUSION

**{23}**    We conclude that the Court of Appeals erred in reversing the district court's denial of Child's motion to suppress. Because the search of Child's trunk was valid under exigent circumstances, Child's conditional plea stands.

**{24}    IT IS SO ORDERED.**

_____
                                  **PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**EDWARD L. CHAVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

**RICHARD C. BOSSON, Justice, dissenting**

**BOSSON, Justice (dissenting)**

**{25}**    With respect, I dissent from the majority's holding that exigent circumstances justified a warrantless search of the car trunk in this case. I fear that in its holding, the majority risks eroding the underpinnings of our state-constitution jurisprudence.

**{26}**    That jurisprudence makes it "well-established that Article II, Section 10 [of the New Mexico Constitution] provides more protection against unreasonable searches and seizures than the Fourth Amendment." *State v. Leyva*, 2011-NMSC-009, ¶ 51, 149 N.M. 435, 250 P.3d 861; *see also State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15, 130 N.M. 386, 25 P.3d 225 ("The extra layer of protection from unreasonable searches and seizures involving automobiles is a distinct characteristic of New Mexico constitutional law."). And, as the majority correctly states, "New Mexico has consistently expressed a strong preference for warrants." Maj. op., ¶ 11 (citation and internal quotations omitted). In New Mexico, search warrants are the rule, not the exception, a proposition our appellate courts have repeated time and again over the past twenty years.

8

**{27}** Assuredly, there are occasional exceptions to the warrant requirement, one of those exceptions being a showing of exigent circumstances, such as evidence of an imminent threat to public safety which compels an immediate search without a warrant. *See State v. Gomez*, 1997-NMSC-006, ¶ 39, 122 N.M. 777, 932 P.2d 1 ("[W]e announce today that a warrantless search of an automobile and its contents requires a particularized showing of exigent circumstances."). The determination of exigent circumstances is an objective one that, "[o]n appeal, we may review de novo." *Id.* ¶ 40. A warrantless search may be upheld "based . . . on the combined presence of (1) probable cause to believe that lawfully seizable items are present, and (2) case-specific exigent circumstances that make it reasonable to conduct the search without first going to a judicial officer and obtaining a search warrant." *State v. Rowell*, 2008-NMSC-041, ¶ 26, 144 N.M. 371, 188 P.3d 95 (citations omitted).

**{28}** The district court found probable cause to believe that a rifle might be in the trunk of the car based on (1) the report to police dispatch of a weapon being pointed out of a car window, (2) the car seized matched the description given to dispatch, and (3) the fact that police had not located the weapon in the passenger compartment. Therefore, the warrantless search of the trunk was justified *if* there were "case-specific exigent circumstances that make it reasonable to conduct the search without first going to a judicial officer and obtaining a search warrant." *See id.*

**{29}** The majority opinion correctly points out that judgment is at the heart of the inquiry. Maj. op., ¶ 22. "A warrantless search is invalid if, in the court's estimation, the officer's judgment that exigent circumstances existed was not reasonable." *Gomez*, 1997-NMSC-006, ¶ 40. The question is, therefore, would an objectively reasonable, well-trained officer make the same judgment that was made here? *See id.* "Quite simply, if there is no *reasonable* basis for believing an automobile will be moved or its search will be compromised by delay, then a warrant is required." *Id.* ¶ 44.

**{30}** However, for the Court to defer to the good judgment of officers, the officers must have exercised judgment in the first place. Unfortunately, these officers testified that the search of the trunk was based less upon any specific danger and more upon their training and department procedures. As one officer testified, "that's what we are trained to do in the academy, when doing felony stops." In other words, these officers were trained to search any automobile trunk during a felony stop, merely to eliminate the possibility that people or weapons might be concealed therein. While no one can fault the prudence of such a procedure, it falls far short of the particularized and case-specific justification that our case law has uniformly required for the past twenty years, since *Gomez*, to bypass the constitutional safeguard of a warrant.

**{31}** The majority opinion also points to the gathering crowd of young people who, potentially, might have gained access to the car and the concealed rifle. But close analysis belies any true exigency. At the time the trunk was opened, the three suspects were already handcuffed and safely in custody in separate patrol cars. True, there was a crowd of people "across the street" from where the search of the car was being conducted. The K-9 officer

9

testified that the dog—searching the car for any additional occupants—was distracted because the wind carried the scent of the people across the street, "so [the dog] was more interested in checking the people across the street than he was on checking the vehicle."

**{32}** That was the extent of any "disruption" caused by the crowd. There was no testimony that the crowd was bearing down on the area controlled by the five officers who had the location safely under control. Nor was there any evidence that the officers intended to relinquish control of the vehicle to any private citizen.

**{33}** In focusing on the presence of others near the scene, the majority looks to our recent opinion in *Rowell*, 2008-NMSC-041, as controlling authority. Maj. op., ¶ 15. Specifically, the majority states that our rationale in *Rowell* was "that the deadly weapons in the defendant's car remained accessible to students and *others* until the officer took prompt steps to secure the weapons," which, in turn, required a warrantless search of the car and trunk. *Id.* ¶ 16 (emphasis added). In analogizing this case to *Rowell*, the majority focuses on some similarities. In both cases, the suspects were in custody and no longer had access to the weapons located in the car, but it was nonetheless possible, at least theoretically, for other people to gain access to the weapons. Maj. op., ¶¶ 17-18.

**{34}** I agree with the majority that in the case before us probable cause existed to believe that a gun might be concealed in the trunk. I also agree that it is reasonable to assume that any gun might be loaded, and therefore, potentially dangerous. But I depart from the majority's holding that it was reasonable to "believe that a gun used in the commission of a crime was in a vehicle accessible to a group of people, even if it was not accessible to the Child." *Id.* ¶ 19. Unlike *Rowell*, there was little discussion in the district court about any purported threat posed by a crowd of young people positioned at all times "across the street." If the officers on the scene were so little concerned, why should this Court essentially create a concern, and from there find exigent circumstance?

**{35}** Additionally, *no* testimony suggested that the search was conducted "to inventory [the vehicle's] contents in anticipation of having it towed and impounded." *See Rowell*, 2008-NMSC-041, ¶ 3 (observing the officer searched the vehicle after securing the defendant in the patrol car, anticipating impounding the vehicle). Nor in this case does it appear that the officers were going to release the vehicle into the custody of another person. *See id.* ¶ 4 ("After the officer learned that no tow truck was available, he contacted Defendant's mother and arranged for her to take custody of her son's car.") When Child's grandfather arrived at the scene and requested to take the car home, one of the officers testified that he replied, "No, that car belonged to us now. It was used in a crime." Ostensibly, the officers intended to impound the vehicle, but the State did not produce the evidence necessary to establish a valid inventory search, and the district court correctly made no such finding.

**{36}** The *Rowell* analysis relies to a significant extent on the observation in that case that "[b]ringing a shotgun or other deadly weapon onto school grounds poses such a high risk of danger that the Legislature specifically has made it a felony offense. *See* [NMSA 1978,] §

10

30-7-2.1 [(1994)]." *Rowell*, 2008-NMSC-041, ¶ 33. As such, because it was "not unreasonable for the Legislature to conclude that the presence of dangerous weapons on school property is an intolerable threat to the safety of students and teachers," it was therefore, not unreasonable for the officer to take the necessary precautions "to remove the weapons from the car and the school grounds." *Id.* Implicit in *Rowell* is the rationalization that, until the officer did so, "the deadly contents of Defendant's car remained accessible to students and others." *Id.* ¶ 34. But not so in the case before us.

**{37}**    In this case, I do not agree that *Rowell* is on point. The incident in question did not occur on school grounds or anything like it. That portion of the *Rowell* analysis that deals with the Legislature's concern for the "intolerable threat to student and teacher safety," is not analogous here. In this case, there is no corresponding law that demonstrates an inherent, intolerable threat to public safety in transporting a rifle in an automobile trunk, itself a lawful act. As such, the presence of the rifle in the locked trunk is not an "intolerable threat" to public safety that, by itself, would justify an immediate search without waiting for ordinary process to produce a warrant. *Rowell*'s warrantless search being predicated upon the exigency of a peculiar set of circumstances—school grounds and the presence of students—cannot be understated. Its reach should be limited to the particular circumstances, and the threat posed, that are simply absent from this case.

**{38}**    Without going too deeply into the facts, it bears emphasis that five officers were present on the scene, the crowd was across the street, and there was no testimony that the area was not secure or that the officers were going to leave the vehicle accessible to the public. Additionally, no testimony established that the alleged weapon was cocked, fragile, or, like a bomb, could potentially go off at any moment.

**{39}**    The majority offers an additional rationale to justify the warrantless search—that the location of the weapon used in the commission of the crime was as yet unknown, and therefore, officers were required to act swiftly to secure the weapon and protect the public. Maj. op., ¶¶ 20-21. The concern was that the rifle might *not* have been in the trunk, and, if not, that it would have been elsewhere, posing a risk to the public. Therefore, the exigency exists because the police needed to search the trunk, and without delay, as much to ascertain that the gun was *not* there as to find that it was. As support, basing the exigency in part on the inability of police to locate a known or reported weapon, the majority cites to two intermediate appellate court opinions: Pennsylvania, *Commonwealth v. Stewart*, 740 A.2d 712, 718 (Pa. Super. 1992), and New Jersey, *State v. Jones*, 20013 WL 560837 (N.J. Super. A.D. 2013) (unreported). *See* maj. op., ¶¶ 20-21.

**{40}**    In *Stewart*, police stopped a car and testimony established probable cause to believe that the occupants were involved in a shooting, but when police patted the subjects down, the guns were not located on their person. *Stewart*, 740 A.2d at 718. The concern then was that the guns might have been tossed out of the car window, if not located in the car. Thus, as the majority noted, the police were concerned that a third person might come across the gun, and to prevent that, the police needed to act immediately. *See id.*; *see also* maj. op., ¶

11

20. However, that was not the only evidence offered as proof of exigency. Additional testimony established that: (1) to search the route the vehicle traveled would have exhausted police resources at that time of night, (2) it would have taken several hours "to obtain a search warrant at approximately 3:00 a.m. on a Saturday morning," (3) it would have "taken [police] several hours to get a tow truck at that time of night," (4) area night clubs were getting out at the time of the incident which was a concern to the officers, and (5) the gun in question was more "fragile" or prone to "go off" than other types of guns. *Stewart*, 740 A.2d at 716.

**{41}** None of this is present here. Although in this case there could have been a reasonable concern that the rifle had been deposited somewhere else before the officers arrived at the scene, no evidence established that police resources were taxed at that point, that it would have taken an excessive amount of time to get a warrant to search the trunk, that there was anything uniquely fragile about the rifle, or that the area to be searched was difficult or unusual. In fact, the vehicle was stopped in sight of where the reported incident took place, shortly after the report. Also, no evidence established how long it would have taken to secure a warrant.

**{42}** Also, in *Stewart*, the court observed that the search was minimally intrusive—an officer "shined a flashlight [through the car window] and noticed that the floor mat in front of the driver's seat was askew. He lifted the mat and discovered a loaded 9-mm gun under the driver's side floor mat and a .22 caliber Beretta under the passenger side floor mat." *Stewart*, 740 A.2d at 718. The court concluded that the search was not unreasonable, but in so doing, it "balanc[ed] the gravity of the offense and the level of danger confronted by the officers against the level of intrusion." *Id.* at 719. Would the court have concluded that it was permissible to search the trunk as well? Perhaps, but it is not clear from the opinion. While the search in *Stewart* is not a plain-view exception, it is a more minimal intrusion than opening a locked compartment of a car.

**{43}** In *Jones*, like *Stewart,* an officer "placed her flashlight next to the open [vehicle] window and observed two inches of a gun handle sticking out from underneath the passenger's seat. [An officer] opened the door of the [unlocked] car, retrieved the gun, closed the window, and locked the doors." *Jones*, 2013 WL 560837 at 2. Officers in *Jones* had responded to a "shots fired" call in a "high-crime area." *Id.* at 1. When officers arrived "they observed a 'very loud and disorderly' group of approximately forty to fifty people . . . [and] two males sitting inside [a car near the location of the shots fired call who] seemed nervous" and were acting suspiciously. *Id.* The two males exited the car, then the defendant "peeked his head inside" the car's passenger window. *Id.* When officers approached, the defendant initially denied any knowledge of the vehicle, but later admitted he had been sitting inside. *Id.*

**{44}** *Jones* concluded that the search was justified under the plain-view exception; the *seizure* of the weapon was justified by exigency. *Id.* at 4-5. The court held that the seizure was justified (1) where officers responded to a shots-fired call in a "'high-crime area' known

to the officers for gun use and homicides," (2) the "scene was chaotic," (3) a number of the forty to fifty *disorderly* people were in the vicinity of an unsecured gun "in an unlocked car with the passenger window open," and (4) the defendant was not in custody. *Id.* at 5. *Jones* further stated, "[i]n sum, the observation of the gun was made without any search and the police intrusion to seize the gun was limited to what was necessary to secure the weapon." *Id.* Actually, I find the *Jones* analysis persuasive under the circumstances, but our case simply is not *Jones.*

**{45}** Unlike *Jones*, we have a secured scene, in a place that was not described as a high crime area, and the suspects were safely in custody. The only things the officers were doing at that point were (1) following department "felony-stop procedures" and (2) gathering and processing evidence. While public safety is a reasonable and valid concern, neither the officers nor the State expressed a public-safety concern as a rationale for exigency.

**{46}** I agree that courts should defer to an officer's good judgment, but in this case the officers never offered evidence of any exercise of judgment. The officers simply followed protocol. If officer protocol is now enough to establish a valid exigency, then I fear we have lost all control over automobile searches. As the district court judge observed, "I'm not questioning the procedures undertaken by law enforcement . . . that it wouldn't perhaps have been advisable to check the trunk out. But I've got to divorce myself from what may be smart from a protective standpoint from what's covered by [Article II, Section 10 of the New Mexico Constitution]."

**{47}** At bottom, I write this dissent because I fear how the majority opinion will be applied in the arena of criminal prosecutions. I fear that our holding today brings us closer to the federal automobile exception, assiduously avoided by this very Court in *Gomez,* that "permits a warrantless search of a lawfully stopped automobile and any closed containers within that automobile," almost as a per se exigency based on the presence of an automobile. *Gomez*, 1997-NMSC-006, ¶ 34.

**{48}** We live in a dangerous world, replete with violence and the criminal abuse of firearms. It will not require much of a stretch for the prosecution to frame a reasonable apprehension of firearms in the case of many, if not most, felony stops. Before today, I had thought that closed (and particularly locked) containers or compartments within automobiles could not be searched for a weapon without a warrant. I had thought that exigent circumstances would be limited to the suspected presence of something like explosives, or a missing kidnap victim, or a felon on the loose, or an immediate definable threat to the safety of school children. I remain hopeful that I am wrong about the potential impact of the majority opinion. But my concerns compel this dissent in the hope that future events prove me wrong.

_____
**RICHARD C. BOSSON, Justice**

13