## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMSC-007

Filing Date: January 4, 2018

Docket No. S-1-SC-35116

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

JENNIFER MARTINEZ,

      Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Martha Anne Kelly, Assistant Attorney General
Kenneth H. Stalter, Assistant Attorney General
Steven H. Johnston, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**VIGIL, Justice.**

**{1}** Our resolution of this appeal turns on the standard of review that applies to a district court's findings of fact concerning a motion to suppress evidence. Specifically, we defer to the district court's findings if supported by substantial evidence. *See State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

**{2}** Bloomfield Police Sergeant George Rascon pulled over Defendant Jennifer Martinez for failing to stop at a stop sign and, as a result, the police obtained evidence that led to Defendant's arrest and conviction for driving while intoxicated. In a motion to suppress evidence, Defendant argued that the video from the officer's on-board camera, or "dash-cam," demonstrated that Defendant made a legal stop at the intersection and that the officer lacked reasonable suspicion to pull her over. At an evidentiary hearing, the officer testified that Defendant went past the stop sign before coming to a complete stop, blocking the intersection. The district court viewed the dash-cam video and concluded that the officer had reasonable suspicion to conduct the traffic stop, even though the video demonstrated that the alleged traffic violation was not as blatant as described by the officer.

**{3}** The Court of Appeals reversed, reasoning that the officer was not credible and that the video evidence was too ambiguous to support a finding of reasonable suspicion. *State v. Martinez*, 2015-NMCA-051, ¶ 1, 348 P.3d 1022, *cert. granted*, 2015-NMCERT-005. We hold that the Court of Appeals misapplied the standard of review, which requires the appellate court to defer to the district court's findings of fact if supported by substantial evidence and to view the facts in the light most favorable to the prevailing party.

## I.      BACKGROUND

**{4}** Defendant was charged in magistrate court with driving while under the influence of intoxicating liquor or drugs (second offense), *see* NMSA 1978, § 66-8-102 (2008, amended 2016); consumption of an alcoholic beverage in a motor vehicle, *see* NMSA 1978, § 66-8-138(A) (2001, amended 2013); and failure to stop at a stop sign, *see* NMSA 1978, § 66-7-345(C) (2003). Defendant filed a motion to suppress evidence, arguing that the officer lacked reasonable suspicion to initiate the traffic stop. The magistrate court denied the motion to suppress. Defendant entered a conditional guilty plea to driving while under the influence of intoxicating liquor or drugs, reserving her right to appeal the suppression issue. *See State v. Celusniak*, 2004-NMCA-070, ¶ 10, 135 N.M. 728, 93 P.3d 10 (recognizing that a defendant in magistrate court "may enter a conditional plea of guilty or no contest, reserving one or more issues for appeal").

**{5}** Defendant appealed de novo to the district court and renewed her motion to suppress. *See* N.M. Const. art. VI, § 27 (providing for de novo appeal to district court). The State's evidence at the suppression hearing consisted of Sergeant George Rascon's testimony and the dash-cam video. The officer testified that on November 11, 2008, at about 10:00 p.m., he was patrolling a residential neighborhood in Bloomfield when he saw a vehicle approaching the four-way intersection of Sycamore and North Third at a "high rate of speed." The officer testified that when Defendant reached the intersection, she went past the stop sign before coming to a complete stop, blocking the southbound lane of traffic. The officer activated his emergency lights and pulled Defendant over for failing to stop at the stop sign.

**{6}** After hearing the officer's testimony and watching the dash-cam video, the district

court denied Defendant's motion to suppress. The district court judge explained her ruling as follows:

> [A]fter hearing Sergeant Rascon's testimony I was certainly confused as to why [Defendant] would file a motion to suppress because he made it sound very clear why . . . he stopped and that there was reasonable suspicion. But I think it just goes to show you really need to review the video in every case. And in this case, after reviewing the video, I truly find the truth somewhere in between both positions. I certainly didn't see Sergeant Rascon's testimony that . . . she stopped in the middle of the intersection; I don't think that was the case. However, I do think she . . . seemed to be going quickly, she seemed to have slammed on her brakes, and she seems to have slammed on her brakes further into the intersection than I think is allowable, creating the reasonable suspicion for Sergeant Rascon to . . . stop [Defendant]. So therefore I will deny Defendant's motion to suppress, although I will grant that it was certainly a closer call than I thought it was going to be at first. But I still think Sergeant Rascon did have reasonable suspicion to stop her.

{7}     The Court of Appeals reversed. *Martinez*, 2015-NMCA-051. The Court of Appeals inferred from the judge's remarks that "the district court found that the officer was not credible." *Id.* ¶ 12. The Court of Appeals concluded that "the district court was left with no facts other than the video on which to conclude that the stop was supported by a reasonable suspicion." *Id.* The Court of Appeals then conducted an independent review of the dash-cam video and found that the video evidence was too ambiguous by itself to support a finding of reasonable suspicion. *Id.* ¶¶ 13-14. We granted certiorari under Article VI, Section 2 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972), to consider whether the Court of Appeals erred by failing to view the facts in the manner most favorable to the prevailing party.

## II.     DISCUSSION

### A.     Standard of Review

{8}     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957. "First, we look for substantial evidence to support the [district] court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858 (internal quotation marks and citation omitted). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *Id.* (internal quotation marks and citation omitted).

### B.     The Court of Appeals Erred by Failing to Afford Proper Deference to the District Court's Findings of Fact

3

**{9}** The State argues that the Court of Appeals erred by failing to view the facts in the manner most favorable to the State, which prevailed in the district court. Defendant asks us to affirm the Court of Appeals, arguing that the objective evidence from the dash-cam demonstrates that the traffic stop was unconstitutional.

**{10}** Defendant relies on both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. These constitutional provisions "provide overlapping protections against unreasonable searches and seizures," *Yazzie*, 2016-NMSC-026, ¶ 17 (internal quotation marks and citation omitted), including safeguards for "brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A police officer can initiate an investigatory traffic stop without infringing the Fourth Amendment or Article II, Section 10 if the officer has "a reasonable suspicion that the law is being or has been broken." *Yazzie*, 2016-NMSC-026, ¶ 38.[1] "In analyzing whether an officer has reasonable suspicion, the trial court must look at the totality of the circumstances, and in doing so it may consider the officer's experience and specialized training to make inferences and deductions from the cumulative information available to the officer." *State v. Gonzales*, 2011-NMSC-012, ¶ 15, 150 N.M. 74, 257 P.3d 894. An officer obtains reasonable suspicion when the officer becomes "aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989) (explaining that the requisite "level of suspicion" needed to conduct an investigatory stop "is considerably less than proof of wrongdoing by a preponderance of the evidence" and "is obviously less demanding than that for probable cause").

**{11}** In this case, the district court concluded that the officer had reasonable suspicion to pull Defendant over for violating Section 66-7-345(C) of the Motor Vehicle Code. Section 66-7-345(C) requires a driver to stop at a stop sign as follows:

> Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting

---

[1]"Although we have interpreted Article II, Section 10 to provide broader protections against unreasonable search and seizure than the Fourth Amendment in some contexts, we have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop." *Yazzie*, 2016-NMSC-026, ¶ 38 (citation omitted). Defendant does not argue that a standard other than reasonable suspicion should apply to an investigatory stop under Article II, Section 10.

4

roadway before entering the intersection.

There was neither a crosswalk nor a stop line at the intersection of Sycamore and North Third, so Section 66-7-345(C) required Defendant to stop "at the point nearest the intersecting roadway before entering the intersection." *See* NMSA 1978, § 66-1-4.9(B)(1) (1998, amended 2015) (defining "intersection" as "the area embraced within the prolongation or connection of the lateral curb lines or, if none, then the lateral boundary lines of the roadways of two highways that join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict"). At the suppression hearing, the district court heard the State's evidence and reviewed the language of Section 66-7-345(C) before finding that Defendant was "going quickly" and "slammed on her brakes further into the intersection than . . . allowable, creating the reasonable suspicion" for the officer to pull Defendant over for a traffic violation.

**{12}**     Defendant asserts that the dash-cam video does not show a violation of Section 66-7-345(C) and argues that it is appropriate to reverse the district court's finding of reasonable suspicion on appeal based on an independent review of the video. Defendant contends that this Court is in as good a position as the district court to make findings based on the video because video is a type of documentary evidence. We agree that "[w]here the issue to be determined rests upon interpretation of documentary evidence, this Court is in as good a position as the trial court to determine the facts and draw its own conclusions." *Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 13, 303 P.3d 814 (internal quotation marks and citation omitted). But in this case the evidence before the district court included both the officer's testimony and the dash-cam video. On appeal, we must review the totality of the circumstances and must avoid reweighing individual factors in isolation. *See Arvizu*, 534 U.S. at 274 (disapproving an appellate court's "divide-and-conquer analysis" that evaluated and rejected various factors in isolation, rather than reviewing the " 'totality of the circumstances' "). In doing so, we "defer to the district court's findings of fact if substantial evidence exists to support those findings" and "view the facts in the manner most favorable to the prevailing party." *Urioste*, 2002-NMSC-023, ¶ 6.

**{13}**     The parties disagree about the extent to which the district court found the officer credible and relied on his testimony in finding that the traffic stop was supported by reasonable suspicion. Defendant contends that the district court rejected the officer's testimony. The Court of Appeals adopted Defendant's position. *See Martinez*, 2015-NMCA-051, ¶ 12 ("The district court could, perhaps, have stripped away the officer's exaggeration while giving credence to the officer's perception that Defendant came to rest in the intersection. But it did not. Instead, the district court found that the officer was not credible."). The State, on the other hand, asserts that the district court found aspects of the officer's testimony credible even though he misremembered or exaggerated exactly how far Defendant protruded into the intersection before coming to a complete stop. The State argues that the Court of Appeals misconstrued the district court's credibility findings and contravened the standard of review by independently reweighing the evidence on appeal. We

5

agree with the State.

**{14}** When acting as the fact-finder at a suppression hearing, the district court must evaluate the credibility of witnesses and determine the weight to which the evidence is entitled. *See State v. Gonzales*, 1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128 ("Determining credibility and weighing evidence are tasks entrusted to the trial court sitting as fact-finder."). The district court may exercise "discretion to credit portions of a witness' testimony even though it finds other portions dubious." *United States v. Whalen*, 82 F.3d 528, 532 (1st Cir. 1996); *see also Kadia v. Gonzales*, 501 F.3d 817, 821 (7th Cir. 2007) ("Anyone who has ever tried a case or presided as a judge at a trial knows that witnesses are prone to fudge, to fumble, to misspeak, to misstate, to exaggerate. If any such pratfall warranted disbelieving a witness's entire testimony, few trials would get all the way to judgment."). On appeal, we defer to the district court's evaluation of witness credibility. *See Urioste*, 2002-NMSC-023, ¶ 6 ("As a reviewing court we do not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses."). An appellate court is "unable to view the witness's demeanor or . . . manner of speech, and therefore [is] not in a position to evaluate many of the aspects of witness credibility that the trier of fact may evaluate." *State v. Evans*, 2009-NMSC-027, ¶ 37, 146 N.M. 319, 210 P.3d 216. If the district court does not make explicit credibility findings, "we will indulge in all reasonable presumptions in support of the district court's ruling." *See Jason L.*, 2000-NMSC-018, ¶ 11 (internal quotation marks and citation omitted).

**{15}** In this case, the district court did not make an explicit finding regarding the officer's credibility but did find that "the truth [fell] somewhere in between [the officer's and Defendant's] positions." The district court further found that the officer "did have reasonable suspicion to stop" Defendant for a traffic violation. "Factfinding frequently involves selecting which inferences to draw." *Jason L.*, 2000-NMSC-018, ¶ 10 (internal quotation marks and citation omitted). An appellate court must indulge in "[a]ll reasonable inferences in support of the district court's decision" and disregard "all inferences or evidence to the contrary." *Id.* (alteration omitted) (internal quotation marks and citation omitted). "The fact that another district court could have drawn different inferences on the same facts does not mean this district court's findings were not supported by substantial evidence." *Id.* Applying the appropriate standard of review, we presume that the district court credited the officer's perception that Defendant violated Section 66-7-345(C), even though the dash-cam video showed that the violation was not as blatant as the officer described.

**{16}** Defendant relies on cases from other jurisdictions to argue that the officer's testimony should not weigh into our reasonable suspicion calculus because the dash-cam video contradicted the officer's testimony. *See, e.g.*, *State v. Canty*, 736 S.E.2d 532, 536-37 (N.C. Ct. App. 2012) (finding no reasonable suspicion, in part because a video disproved an officer's assertion that the defendant's vehicle crossed the fog line); *Carmouche v. State*, 10 S.W.3d 323, 331-32 (Tex. Crim. App. 2000) (declining to defer to the district court's findings, in part because a video presented "indisputable visual evidence contradicting essential portions" of an officer's testimony). Defendant asserts that when an officer's

testimony is materially different from objective evidence, the objective evidence should control a court's factual understanding of what took place. *See Ortega v. Koury*, 1951-NMSC-011, ¶ 8, 55 N.M. 142, 227 P.2d 941 ("Physical facts and conditions may point so unerringly to the truth as to leave no room for a contrary conclusion based on reason or common sense, and under such circumstances the physical facts are not affected by sworn testimony which in mere words conflicts with them."); *see also Crownover v. Nat'l Farmers Union Prop. & Cas. Co.*, 1983-NMSC-099, ¶ 8, 100 N.M. 568, 673 P.2d 1301 ("A decision resting on evidence which is inherently improbable is not based on substantial evidence.").

**{17}** The cases Defendant cites are distinguishable from this case. Here, the facts were not indisputably established, and the dash-cam video did not squarely contradict the officer's testimony. Due to poor lighting and the angle of the dash-cam, the video does not show whether Defendant violated Section 66-7-345(C) by failing to stop "at the point nearest the intersecting roadway before entering the intersection." As noted by the Court of Appeals, "[b]ecause of the angle on which the video is taken, it is impossible to determine whether Defendant's vehicle is just barely in the intersection (a violation) or just barely behind the intersection (no violation) when it came to a stop." *Martinez*, 2015-NMCA-051, ¶ 14. Defendant acknowledges that the dash-cam video provides a distorted view of the intersection, making it difficult to ascertain the position of Defendant's car relative to the curb when she came to a stop. If there is "conflicting evidence, we defer to the district court's factual findings, so long as those findings are supported by evidence in the record." *Evans*, 2009-NMSC-027, ¶ 37.

**{18}** We hold that the record, viewed in the light most favorable to the district court's ruling, includes sufficient evidence to support the district court's finding that the officer had an objectively reasonable basis to stop Defendant for violating Section 66-7-345(C). The officer testified that Defendant's car approached the intersection at a "high rate of speed" and went past the stop sign before coming to a stop in the intersection, blocking the southbound lane of traffic. Although the dash-cam video does not show that Defendant blocked the intersection and is ambiguous concerning whether Defendant violated Section 66-7-345(C), the video confirms the officer's testimony that Defendant was moving quickly when she braked and that her vehicle went past the stop sign before stopping. The district court resolved the parties' factual dispute in favor of the State, finding that Defendant drove too far into the intersection before slamming on her brakes and coming to a stop. We conclude that the Court of Appeals erred by reweighing the evidence on appeal and failing to view the facts in the manner most favorable to the prevailing party.

## III.  CONCLUSION

**{19}** Having considered the totality of the circumstances and given appropriate deference to the district court's factual findings, we affirm the district court's determination that the officer had reasonable suspicion to stop Defendant. We reverse the Court of Appeals and remand for further proceedings consistent with this opinion.

**{20}  IT IS SO ORDERED.**

                              _____

                              **BARBARA J. VIGIL, Justice**

**WE CONCUR:**

_____

**JUDITH K. NAKAMURA, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**