This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38783

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHARLES WILSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** This matter was submitted to the Court on Defendant's brief in chief, pursuant to the Administrative Order for Appeals in Criminal Cases Involving the Law Offices of the Public Defender, From the Eleventh Judicial District Court in *In re Pilot Project for Criminal Appeals*, No. 2019-002, effective October 1, 2019. Following consideration of the brief in chief, the Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief and the State's answer, we affirm for the following reasons.

**{2}** Defendant appeals from the denial of his motion to suppress evidence. [RP 90-93] Defendant argues that his right to be free from unreasonable searches and seizures under the United States Constitution and Article II Section 10 of the New Mexico Constitution were violated when "he was seized by the Farmington police officers without reasonable suspicion that he was committing a crime." [BIC 7, 8] Defendant specifically argues that a seizure occurred when the officers initially made contact with Defendant outside of a laundromat, and at that time, the officers lacked reasonable suspicion of criminal activity. [BIC 1, 12] Defendant also argues that even if the officers obtained reasonable suspicion after the initial encounter, "evidence discovered as a result of the exploitation of an illegal seizure must be suppressed unless it had been purged of its primary taint." [BIC 12] "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186 (internal quotation marks and citation omitted). "First we look for substantial evidence to support the district court's factual finding, with deference to the district court's review of the testimony and other evidence presented[,]" and then we "review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *Id.* (alteration, internal quotation marks, and citation omitted).

**{3}** According to the briefing, it appears that both parties agree to the relevant facts in the case. The district court's findings of fact were based on Officer Domenici's testimony at trial. [AB 10] Officer Domenici testified that he and another officer were on patrol in a marked police vehicle in Farmington, New Mexico on July 20, 2018, at approximately one o'clock in the morning in full uniform. [RP 90 ¶ 1; BIC 1] The officers heard a whistle, and believing someone was attempting to get their attention for assistance, they pulled into the parking lot of a nearby closed laundromat where they encountered Defendant sitting on a parking stop. [RP 91 ¶¶ 3-5; BIC 1-2] The officers pulled up near Defendant and exited the vehicle. [RP 91 ¶ 6; BIC 2] There were no other people or cars in the immediate vicinity. [RP 91 ¶ 7] Immediately upon exiting the vehicle, the officers saw Defendant place something in his shoe. [AB 2; BIC 2] The officers asked Defendant if he "was attempting to flag them down" and Defendant responded that he was not. [RP 91 ¶ 6; BIC 2] Defendant then stood up and took a "bladed fighting stance" while holding something in his hand behind his back. [RP 91 ¶ 8; AB 2; BIC 2] Officer Domenici found Defendant's behavior threatening and instructed Defendant to show the officers his hands and sit down. [RP 91 ¶ 9; AB 3] Defendant then "dropped a river rock which was approximately six inches in diameter" that he had been holding behind his back [RP 91¶ 10; AB 3; BIC 2-3], and "began digging through his pockets and throwing things out, prompting Officer Domenici to instruct him to keep his hands out of his pockets and again to sit down." [AB 3] Defendant did not comply, at which point the other officer took hold of Defendant from behind. [AB 3] Officer Domenici testified that his initial encounter with Defendant was consensual, "but that when Defendant armed himself and concealed the rock, the investigation shifted to a possible violation of the idling, loitering, or prowling ordinance." [AB 4] He also testified that "[h]is biggest concern, however, was that [Defendant] was going to attack him and his partner." [BIC 3] Given this testimony, we conclude that there was substantial evidence to support the district court's findings. *See Martinez*,

2018-NMSC-007, ¶ 8; *State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858 (stating that "[s]ubstantial evidence is evidence that a reasonable mind would regard as adequate to support a conclusion" (internal quotation marks and citation omitted)).

**{4}** Next, we must determine when the seizure occurred. *See State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30 ("The point at which the seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop."). In this case, there are three points in time when Defendant could have been seized: (1) when the officers initially approached Defendant; (2) when Officer Domenici told Defendant to show his hands and sit down; or (3) when Defendant was physically restrained. Defendant argues that seizure possibly occurred when the officers initially approached him, and "[a]t the very least" he was seized "when Officer Domenici ordered him to sit down." [BIC 10] The State argues that the officers' initial contact with Defendant was consensual "in that Defendant whistled, . . . and the officers approached Defendant to inquire why he had flagged them down." [AB 4] The State also argues that if Defendant was seized when Officer Domenici told him to show his hands and sit down, "Officer Domenici had by that time developed reasonable suspicion of criminal activity—during the consensual portion of the encounter—sufficient to support the seizure." [AB 25] Defendant argued in his motion to suppress that the New Mexico Constitution affords him greater protection than the United States Constitution when it comes to seizures. [RP 76 ¶ 2] *See State v. Gomez*, 1997-NMSC-006, ¶ 22, 122 N.M. 777, 932 P.2d 1 ("Assertion of the legal principle and development of the facts are generally the only requirement to" fairly invoke a ruling by the [district] court on broader protection afforded under a state constitution).

**{5}** "[U]nder the interstitial approach, the court asks first whether the right being asserted is protected under the [F]ederal [C]onstitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined." *State v. Garcia*, 2009-NMSC-046, ¶ 13, 147 N.M. 134, 217 P.3d 1032. As this Court acknowledged in *State v. Simpson*, "for purposes of the Fourth Amendment, a seizure based on a show of authority, as opposed to physical force, requires submission to the assertion of authority." 2019-NMCA-029, ¶ 8, 446 P.3d 1160 (emphasis, internal quotation marks, and citation omitted); *see State v. Morales*, 2005-NMCA-027, ¶ 13, 137 N.M. 73, 107 P.3d 513 (stating that under the protections of the Fourth Amendment, "[a] seizure requires either the 'use of physical force' by an officer 'or submission by the individual' to the officer's assertion of authority" (internal quotation marks and citation omitted)). Based on the district court's findings of fact and the facts in the briefing, at no point during the encounter did Defendant submit to the officers' authority. Instead, Defendant ignored Officer Domenici's commands to show his hands and sit down. Accordingly, under the Fourth Amendment, Defendant was not seized until he was physically taken into custody. We now determine whether Defendant was seized when the officers initially approached Defendant under the New Mexico Constitution.

**{6}** Our Supreme Court held "that our State Constitution does not require submission to authority, and instead, the 'free-to-leave' test articulated in *Mendenhall* provides the standard for determining whether a person is seized for purposes of Article II, Section 10 of the New Mexico Constitution." *Simpson*, 2019-NMCA-029, ¶ 8 (citing *Garcia*, 2009-NMSC-046, ¶ 35). "[A] person is seized within the meaning of the Fourth Amendment when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Simpson*, 2019-NMCA-029, ¶ 7 (alterations, internal quotation marks, and citation omitted). "An otherwise consensual encounter becomes a seizure under the reasonable person standard when an officer engages in conduct significantly beyond that accepted in social intercourse." *Garcia*, 2009-NMSC-046, ¶ 38 (alteration, internal quotation marks, and citation omitted). Possible indicators of seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* ¶ 39 (internal quotation marks and citation omitted). When determining whether a reasonable person would feel free to leave, reviewing courts should consider: "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Id.* ¶ 40 (internal quotation marks and citation omitted).

**{7}** Viewing the evidence with deference to the findings of the district court, we hold that a seizure did not occur when the officers first approached Defendant. *See Martinez*, 2018-NMSC-007, ¶ 8. Although the officers were in uniform and pulled into the parking lot in a marked police vehicle, there is no evidence that either officer "displayed a weapon, physically touched Defendant, or used language or tone of voice that would indicate that compliance be compelled." *Simpson*, 2019-NMCA-029, ¶¶ 14-15 (holding that a uniformed police officer tapping on the window of a parked car is not a seizure when the officer did not display a weapon, physically touch the defendant, or use language or a tone of voice compelling compliance). Instead, the officers approached Defendant because they heard someone whistle and asked Defendant if he was trying to flag them down. *See Garcia*, 2009-NMSC-046, ¶ 38 (stating the critical factor in determining if a consensual encounter becomes a seizure "is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as nonoffensive contact if it occurred between two ordinary citizens" (internal quotation marks and citation omitted)). We conclude that the seizure occurred when Officer Domenici ordered Defendant to show his hands and sit down. *See id.* ¶ 41 (finding a seizure where the officer "stopped his marked car in the intersection within close proximity to [the d]efendant and shone his spotlight on him" and then told, ordered, or yelled at the defendant to stop "in a manner clearly indicating that compliance was required"); *State v. Jason L.*, 2000-NMSC-018, ¶ 17, 129 N.M. 119, 2 P.3d 856 (finding a seizure occurred where two officers approached a juvenile defendant on an empty street at night who the defendant "knew had been observing [him] prior to the encounter[,]" the officers "demanded that [the defendant] approach," and "[t]he tenor of the encounter changed when [one officer] asked [the d]efendant if he was in possession of weapons").

**{8}** Finally, we consider whether the officers had reasonable suspicion for the seizure. The district court concluded that Officer Domenici had reasonable suspicion to expand the initial encounter with Defendant into a criminal investigation. [RP 92] Defendant argues that the officers lacked reasonable suspicion that Defendant was committing a crime. [BIC 7] The State argues that Officer Domenici had developed reasonable suspicion by the time he ordered Defendant to sit down and show his hands for two reasons: (1) Defendant taking a "bladed stance" and hiding his hand behind his back caused Officer Domenici to fear for his safety and suspect that Defendant may assault one of the officers [AB 25]; and (2) "[b]y hanging around a closed business late at night and concealing one item in his shoe and another behind his back upon seeing the officers, Defendant gave Officer Domenici reason to believe he may be violating the city ordinance prohibiting idling, loitering, or prowling." [AB 26]

**{9}** An officer "may detain a person in order to investigate possible criminal activity." *Jason L.,* 2000-NMSC-018, ¶ 20 (internal quotation marks and citation omitted).

> Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken. A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law. Unsupported intuition and inarticulate hunches are not sufficient. Reasonable suspicion must exist at the inception of the seizure.

*Id.* (internal quotation marks and citations omitted). The Farmington Municipal Code states:

> No person shall loiter, idle, or prowl in a place at a time and in a manner that warrants alarm for the safety of persons or property in the vicinity. . . . Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that the actor takes flight upon appearance of a peace officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object.

Farmington, N.M., Code of Ordinances ch. 18, art. IV, § 18-4-4 (1969).

**{10}** In the present case, Officer Domenici had a particularized suspicion that Defendant was idling, loitering, or prowling in the laundromat parking lot given the following circumstances: (1) the officers found Defendant in the laundromat parking lot in the middle of the night when the laundromat was closed; (2) Officer Domenici saw Defendant hide something in his shoe when the officers approached; and (3) Defendant was hiding something behind his back when he was speaking with the officers. These facts were sufficient to raise a reasonable and articulable suspicion in Officer Domenici sufficient to investigate whether Defendant was idling, loitering, or prowling, thereby making Officer Domenici's seizure of Defendant proper. *See Jason L.,* 2000-NMSC-018, ¶ 20.

**{11}** Based on the foregoing, we affirm the district court's order denying Defendant's motion to suppress.

**{12}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**