The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: January 10, 2022

**NO. S-1-SC-37589**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**SOMER D. WRIGHT,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Matthew G. Reynolds, District Judge**

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Charles J. Gutierrez, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**VIGIL, Chief Justice.**

{1}     Our Legislature has directed, "No person shall be arrested for violating the Motor Vehicle Code or other law relating to motor vehicles punishable as a misdemeanor except by a commissioned, salaried peace officer who, at the time of arrest, is wearing a uniform clearly indicating the peace officer's official status." NMSA 1978, § 66-8-124(A) (2007). We held in *State v. Slayton* that an arrest by a police service aide in violation of Section 66-8-124(A) did not, by itself, amount to a per se violation of the Fourth Amendment to the United States Constitution. *See* 2009-NMSC-054, ¶¶ 1, 33, 147 N.M. 340, 223 P.3d 337. In this case, we are asked to determine whether the arrest of Defendant Somer D. Wright by a noncommissioned, volunteer reserve deputy in violation of the statute was constitutionally unreasonable and therefore in violation of Article II, Section 10 of the New Mexico Constitution. Disagreeing with the opinion of a divided Court of Appeals panel holding that there was no constitutional violation, *State v. Wright*, 2019-NMCA-026, ¶¶ 6, 13, 19, 458 P.3d 604, we reverse.

{2}     We hold that the failure to observe the requirements of Section 66-8-124(A) resulted in an illegal arrest of Defendant and violated Article II, Section 10 of the New Mexico Constitution. Suppression of all evidence obtained as a result of the

arrest is therefore required. In reversing the Court of Appeals we reiterate that reviewing courts are to give sufficient deference to the findings of fact of our trial courts and not reweigh evidence on appeal. *See State v. Martinez*, 2018-NMSC-007, ¶¶ 13, 18, 410 P.3d 186 ("[T]he Court of Appeals erred by reweighing the evidence on appeal and failing to view the facts in the manner most favorable to the prevailing party.")

## I. BACKGROUND

### A. Factual History

{3}     Torrance County Reserve Deputy Roy Thompson testified that around midnight on March 15, 2014, he noticed two vehicles approaching him from behind as he drove south on Highway 41, in uniform and in a marked patrol vehicle belonging to the Torrance County Sheriff's Office. The first vehicle to approach Thompson was a white Dodge truck (Defendant's truck), and the second was a green truck. Thompson testified that the headlights of Defendant's truck appeared to be "going back and forth." Thompson testified that he pulled off the highway, allowing the vehicles to pass, and that as Defendant's truck passed, it crossed the solid white line on the edge of the roadway, nearly striking Thompson's patrol vehicle. Thompson reentered the highway and accelerated to catch Defendant's truck, going as fast as eighty miles per hour on a fifty-five-mile-per-hour stretch of the highway.

2

Thompson testified that during the pursuit, Defendant's truck was weaving repeatedly in the roadway from the center line to the edge line.

{4}     While following Defendant, Thompson called Torrance County Sheriff's Deputy Ron Fulfer. Deputy Fulfer instructed Thompson to follow Defendant's truck and told Thompson that he would be "right there." Also while driving, Thompson ran Defendant's license plate number and confirmed that Defendant was the owner of the truck. Thompson did not initiate a stop or activate his emergency lights or equipment. Defendant drove to her residence and pulled into her driveway where she hit a parked car, causing paint transfer. Thompson parked his patrol vehicle, parallel to the property, on the street, behind Defendant's truck. After Defendant hit the car parked in her driveway, she placed her truck in reverse, "backed up pretty far," and "almost" hit Thompson's patrol vehicle as well.

{5}     Thompson got out of his patrol vehicle and turned his spotlight on Defendant's truck. Thompson approached Defendant's truck and identified himself as "Reserve Deputy Thompson with the Torrance County Sheriff's Department." "He was dressed in a uniform, displaying a badge of office stating 'Deputy R. Thompson' embroidered onto his shirt." Thompson noticed a "strong odor of alcohol" and asked Defendant if she had been drinking. Defendant stated that she had drunk "four green beers." Thompson told Defendant that he saw her strike the vehicle in her driveway

and that she almost backed into his patrol vehicle. Thompson then "asked" Defendant to "hang tight . . . because [he] had another deputy en route." Defendant was not restrained, but Thompson told her to remain in her truck. Defendant obeyed Thompson's order and remained in her truck for four or five minutes until Deputy Fulfer arrived.

{6} Upon arriving at Defendant's house, Deputy Fulfer met with Thompson. Deputy Fulfer then walked to the parked car in front of Defendant's truck and noticed a "small white scratch on the rear bumper." Next, Deputy Fulfer went to the driver's side of Defendant's truck and asked Defendant for her driver's license, which Defendant produced after Deputy Fulfer repeated his request a second time. Deputy Fulfer asked Defendant whether she had been drinking. After Defendant confirmed that she had been drinking, Deputy Fulfer asked Defendant to perform field sobriety tests, which Defendant failed. Defendant refused to blow into Deputy Fulfer's portable breath tester. Deputy Fulfer arrested Defendant for "driving under the influence of intoxicating liquor or drugs." Subsequently, Defendant had two blood-alcohol-content tests administered at the Torrance County Sheriff's office, for which the "results were .18 and .18."

{7} Defendant was charged with first-offense aggravated driving while intoxicated (DWI), NMSA 1978, § 66-8-102(D)(1), (E) (2016), a misdemeanor,

4

which was later amended to DWI (first offense), *see* § 66-8-102(C)(1), (E).

**B.** **Procedural History**

**1.** **District court hearing and order**

{8} Defendant filed a motion to suppress in the district court, "arguing that volunteer Reserve Deputy Roy Thompson's detention of [Defendant] was illegal and [therefore] suppression of the evidence obtained as a result of that illegal detention was warranted under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution." In response, the State argued that any unlawful detention which occurred did not rise to the level of a Fourth Amendment violation under *Slayton*, 2009-NMSC-054. The State further asserted that any unlawful detention was "in furtherance of an important interest" and was "too brief" to have been "an unreasonable seizure under Article II, Section 10 of the New Mexico Constitution." Specifically, the State argued that the "volunteer deputy had acted as any reasonable citizen would when confronted with a person suspected of driving under the influence of intoxicating liquor, making his conduct constitutionally reasonable" under Article II, Section 10.

{9} In addition to testifying about the stop as described above, Thompson testified about his credentials. Thompson stated that "he had been a volunteer reserve deputy with the Torrance County Sheriff's Department for fifteen to sixteen years" but that

5

he was not a "commissioned, salaried peace officer."

{10}    In cross-examination, defense counsel questioned Thompson about two prior cases in which evidence had been suppressed as a result of Thompson's conduct. In one case, Thompson initiated a traffic stop for careless driving and, on appeal from the magistrate court, the seizure of the defendant was held to be illegal and unreasonable. However, Thompson said he did not remember why the evidence was suppressed. The second case involved Thompson detaining someone at a rest stop, and Thompson remembered that in that case some part of the evidence was suppressed. Following Thompson's testimony, the State conceded that Thompson lacked statutory authority to detain Defendant.

{11}    After the parties filed their respective requested findings of fact and conclusions of law, the district court filed its findings of fact and conclusions of law. The district court concluded that Thompson arrested Defendant when he ordered her "to stay put" in her truck until Deputy Fulfer arrived and that the arrest was contrary to Section 66-8-124(A) and resulted in an illegal detention because Thompson was not a "'commissioned, salaried peace officer.'" The district court further concluded that based on the totality of the circumstances, "but for the illegal detention, Defendant would have gone inside her house before [Deputy Fulfer] arrived four to five minutes after the illegal detention," and whether "Defendant would have opened

6

the door for" Deputy Fulfer, or whether Deputy Fulfer would have attempted to obtain an arrest warrant or enter Defendant's home without permission, was all speculative. The district court therefore concluded that "Thompson's illegal detention of Defendant violated Article 2, Section 10 of the New Mexico Constitution" and that evidence obtained after Deputy Fulfer arrived on the scene should be suppressed. An order suppressing this evidence was then filed. The State appealed to the Court of Appeals.

## 2. Court of Appeals opinion

{12} A divided panel of the Court of Appeals reversed the district court's suppression order. *Wright*, 2019-NMCA-026, ¶¶ 3, 19. Addressing the Article II, Section 10 argument, the majority acknowledged that there is no bright-line rule for determining constitutional reasonableness of searches and seizures in New Mexico and concluded that an examination of the officer's actions under the circumstances of each case is needed. *Wright*, 2019-NMCA-026, ¶ 11. To analyze the reasonableness of Thompson's actions, the majority used the balancing-of-interest test outlined in *State v. Rodarte*, 2005-NMCA-141, 138 N.M. 668, 125 P.3d 647, and *State v. Bricker*, 2006-NMCA-052, 139 N.M. 513, 134 P.3d 800. *Wright*, 2019-NMCA-026, ¶¶ 11, 13. That test required the Court "to evaluate, on the one hand, the degree to which the seizure intruded upon Defendant's privacy and, on the other,

7

the degree to which the seizure was needed for the promotion of legitimate governmental interests." *Id.* ¶ 13 (brackets, internal quotation marks, and citation omitted).

**{13}** The majority first determined that "[u]nder the totality of the circumstances, the intrusion on Defendant's privacy was minimal." *Id.* The majority then reasoned that the State's interest in keeping drunk drivers off the roadway "far outweighed whatever brief, minimal privacy intrusion that Defendant may have experienced." *Id.* ¶ 14. Moreover, the majority concluded that exigent circumstances justified the temporary detention because Defendant might have tried to drive away, or alternatively she might have gone into her home and then refused to come out when Deputy Fulfer arrived, thereby allowing for the dissipation of alcohol otherwise detectable through testing. *Id.* Applying the balancing test in this manner and using facts different from those found by the district court, the majority held "that Thompson's temporary detention of Defendant was constitutionally reasonable." *Id.* ¶ 13. The majority therefore reversed the order of the district court. *Id.* ¶ 19.

**{14}** Dissenting, Judge Vargas agreed that the State had "a compelling interest in deterring drunk driving and maintaining highway safety." *Id.* ¶ 21 (Vargas, J., dissenting). However, adhering to the factual findings of the district court, the dissent disagreed with the majority proposition that Defendant's detention was

8

"'minimal'" as the detention prevented Defendant from going into her own home. *Id*. ¶ 23 (Vargas, J., dissenting). The dissent concluded that the majority failed to properly balance the interest of the public "to be free from arrest by untrained citizens," expressed by legislation directing who can make a traffic stop, and the interest of the public requiring police officers and their volunteers to comply with that law. *Id*. ¶¶ 24-25 (Vargas, J., dissenting). Finally, the dissent noted the majority concession to Thompson's testimony that he did not believe Defendant intended to flee, and the dissent disagreed that exigent circumstances arose from the dissipation of alcohol as but one of the considerations that applies to a reasonableness analysis. *Id*. ¶ 26 (Vargas, J., dissenting). On balance, the dissent agreed with the district court's conclusion that "Thompson's actions were constitutionally unreasonable under Article II, Section 10." *Id*. ¶ 21 (Vargas, J., dissenting).

## II. DISCUSSION

{15}	We granted certiorari on two questions. First, "Did the statutory violation of Section 66-8-124(A) which occurred in this case constitute a violation of [Defendant's] rights under Article II, Section 10 so as to warrant suppression of evidence against [Defendant]?" Second, "In concluding that suppression was not warranted, did the Court of Appeals [m]ajority [o]pinion show sufficient deference to the district court's factual findings or properly balance the privacy and societal

interests embodied by Section 66-8-124(A)?"

{16} Defendant argues that the seizure was unreasonable under Article II, Section 10 of the New Mexico Constitution and, as a result of Defendant's unlawful detention, the evidence obtained should be suppressed. Defendant argues that "the majority did not accord the violation of the statute in this case any significance though it too protects important privacy interests from government overreach."

{17} Defendant also asserts that the majority erred in substituting its factual findings for those of the district court. Specifically, Defendant proffers three examples where the majority failed to give deference. "First, the majority did not defer to the district court's conclusion that Thompson had a history of overstepping his authority even though it was based on testimony the district court had observed and involved a credibility determination the district court was entitled to make." Second, contrary to the factual findings of the district court, the majority determined that Defendant "presented an ongoing danger because she might have driven off again after arriving at her home." "Finally, "the majority erred in rejecting the district court's finding that Thompson had acted in an unnecessarily aggressive manner in pursuing and detaining [Defendant]."

{18} Although the State concedes that Thompson did not have the statutory authority to detain Defendant under Section 66-8-124(A), the State argues that the

10

Court of Appeals was correct in its determination that Defendant's seizure was reasonable. "Considering that DWI is an arrestable offense, a major offense, [and] a felony for constitutional purposes," the State contends, "the Court of Appeals was correct in not giving the statutory violation [a] dispositive effect in this case involving a DWI." The State asserts that the Court of Appeals correctly concluded that exigent circumstances supported Defendant's brief seizure "based on probable cause that Defendant was DWI." The State argues that "compelling interests promoted by the seizure far outweighed the minimal intrusion on Defendant's privacy under the specific facts of the case."

{19} We agree with the Court of Appeals that the following facts are undisputed. First, "Thompson's actions in temporarily detaining Defendant amounted to an 'arrest' as that term is used in Section 66-8-124(A)." *Wright*, 2019-NMCA-026, ¶ 8. Second, "Thompson was not a commissioned, salaried peace officer under Section 66-8-124(A) and therefore acted without statutory authority." *Wright*, 2019-NMCA-026, ¶ 8. Third, Thompson made the arrest as "a state actor." *Id*. Finally, it is undisputed that the "detention of Defendant, although statutorily unauthorized, did not violate the Fourth Amendment." *Id.*

## A.    Standard of Review

{20} Our "review of a motion to suppress presents a mixed question of law and

11

fact." *Martinez*, 2018-NMSC-007, ¶ 8 (internal quotation marks and citation omitted). We first "look for substantial evidence to support the district court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *Id.* (brackets, internal quotation marks, and citation omitted). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *Id.* (internal quotation marks and citation omitted). The reviewing court does not reweigh evidence on appeal. *See id.* ¶¶ 13, 18 (concluding that the Court of Appeals "contravened the standard of review by independently reweighing the evidence on appeal"). Rather, we view the evidence found by the trial court "in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted).

**B.    Analysis**

{21}    To determine whether the New Mexico Constitution affords greater liberty than the United States Constitution, we use the interstitial approach this Court adopted in *State v. Gomez*, 1997-NMSC-006, ¶¶ 20-22, 33, 122 N.M. 777, 932 P.2d 1. Under the interstitial approach, we ask "(1) whether the right being asserted is protected under the federal Constitution; (2) whether the state constitutional claim has been preserved; and (3) whether there exists one of three reasons for diverging

12

from federal precedent." *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 6, 130 N.M. 386, 25 P.3d 225. Under *Gomez*, "A state court . . . may diverge from federal precedent for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." *Gomez*, 1997-NMSC-006, ¶ 19.

{22}     Applying the interstitial approach, we first observe that the right being asserted here is not protected by the Fourth Amendment. *Wright*, 2019-NMCA-026, ¶ 8; *see also Slayton*, 2009-NMSC-054, ¶¶ 32-33 (concluding that under the Fourth Amendment the only inquiry is whether the state actor had reasonable suspicion to detain or probable cause to arrest). Secondly, the state constitutional claim asserted by Defendant was preserved. We therefore turn to the third inquiry: whether there is a reason to depart from federal precedent.

{23}     Article II, Section 10 of the New Mexico Constitution provides, "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." This Court has interpreted this clause to provide a broad right to be free from unwarranted governmental intrusions. *State v. Garcia*, 2009-NMSC-046, ¶ 29, 147 N.M. 134, 217 P.3d 1032, which often results in significantly greater protections than those afforded under the Fourth Amendment. *See, e.g.*, *Gomez*, 1997-NMSC-006, ¶¶ 39, 44 (rejecting the federal, exigency-based automobile

13

exception to the warrant requirement in favor of greater protections under Article II, Section 10); *Cardenas-Alvarez*, 2001-NMSC-017, ¶¶ 2, 5 (holding that extended detention of a defendant at border checkpoint was unlawful under Article II, Section 10 and suppressing evidence seized thereby). Specifically, New Mexico courts have provided an "extra layer of protection from unreasonable searches and seizures" to cases involving automobiles based on the "distinct characteristic of New Mexico constitutional law," which dismissed the notion that an individual lowers his or her expectation of privacy when the individual enters an automobile. *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15.

{24} In addition to greater search and seizure protections afforded by Article II, Section 10, "New Mexico courts have consistently rejected federal bright-line rules in favor of an examination into the reasonableness of officers' actions under the circumstances of each case." *State v. Ochoa*, 2009-NMCA-002, ¶ 24, 146 N.M. 32, 206 P.3d 143; *see State v. Paul T*., 1999-NMSC-037, ¶ 9, 128 N.M. 360, 993 P.2d 74 ("[T]his Court has avoided bright-line, per se rules in determining the reasonableness of searches under Article II, Section 10."). Based on the greater protections afforded under Article II, Section 10 and the disfavor for bright-line categorical rules, our Court of Appeals in *Rodarte* adopted a standard for determining when "an officer may arrest an individual solely on the basis of probable

14

cause that a minor criminal offense for which jail time is not authorized has been committed." 2005-NMCA-141, ¶ 1. That standard is based on Justice O'Connor's dissent in *Atwater v. City of Lago Vista*, 532 U.S. 318, 360-74 (2001), which balances "on the one hand, the degree to which [the arrest] intrudes upon an individual's privacy and, on the other, the degree to which [the arrest] is needed for the promotion of legitimate governmental interests." *Id.* at 361 (O'Connor, J., dissenting) (internal quotation marks and citation omitted); *see Rodarte*, 2005-NMCA-141, ¶¶ 8, 14 (adopting the *Atwater* dissent standard).

{25} In *Rodarte*, the defendant was the passenger in a vehicle that ran a stop sign. *Id.* ¶ 2. After stopping the vehicle, the officer arrested the defendant and transported him to jail on the suspicion of being a minor in possession of alcohol, a nonjailable offense. *See id.* ¶¶ 1, 3. Subsequently, upon searching the back seat of the patrol car, the officer found drugs, and the defendant was charged with possession of a controlled substance. *See id.* ¶¶ 3, 4. In looking to the governmental interests promoted by the arrest, the *Rodarte* Court determined that because the defendant was calm, he was not driving, and he complied with all of the officer's requests, the arrest "was unreasonable because there were no circumstances justifying the officer's choice to arrest . . . rather than issue a citation." *Id.* ¶ 15.

{26} The next year in *Bricker*, our Court of Appeals applied the same balancing-

15

of-interest test that it adopted in *Rodarte*. *Bricker*, 2006-NMCA-052, ¶ 26. In *Bricker*, the defendant was arrested for driving on a suspended license. *Id.* ¶ 1. The arrest violated a New Mexico statute that required a citation and release under these circumstances. *Id.* ¶¶ 2, 14. After applying the balancing test, the *Bricker* Court held that the defendant's arrest, made without statutory authority, "was unreasonable and the seizure was unconstitutional under Article II, Section 10." *Id.* ¶ 30. The Court reasoned that because the Legislature "zeroed in on the traffic offense at issue," requiring citation and release,[1] there was "evidence of an intent to protect individual liberty over perceived governmental need." *Id.* ¶ 29.

{27}  In this case, because the detention of Defendant amounted to an "arrest," *see Slayton*, 2009-NMSC-054, ¶ 20 (concluding that "temporary detentions are covered under the term 'arrest' as used in Chapter 66"), and because Thompson acted without statutory authority and in violation of Section 66-8-124(A), we conclude that the balancing-of-interests test employed in *Rodarte* and *Bricker* to determine constitutional reasonableness under Article II, Section 10 applies here. As a result,

---

[1]*See, e.g.*, NMSA 1978, § 66-8-123(A) (2013) (providing that "whenever a person is arrested for any violation of the Motor Vehicle Code or other law relating to motor vehicles punishable as a misdemeanor, the arresting officer . . . shall . . . prepare a notice to appear in court, specifying the time and place to appear, have the arrested person sign the agreement to appear as specified, give a copy of the citation to the arrested person and release the person from custody").

16

we evaluate, "on the one hand, the degree to which [the arrest] intrudes upon [Defendant]'s privacy and, on the other, the degree to which [the arrest] is needed for the promotion of legitimate governmental interests." *Atwater*, 532 U.S. at 361 (O'Connor, J., dissenting) (internal quotation marks and citation omitted). In applying the balancing test to this case, we emphasize that our Legislature has specifically determined in Section 66-8-124(A) that an arrest can only be made by "a commissioned, salaried peace officer." This reflects the Legislature's determination that the liberty to be free from an arrest by anyone other than "a commissioned, salaried peace officer" for violating a law relating to motor vehicles that is punishable as a misdemeanor outweighs the State's perceived governmental interests in allowing an arrest to be made by anyone else.

{28}    In its attempt to weigh the interests in favor of the State to validate the arrest, the majority of the Court of Appeals overlooked the district court's findings, engaged in its own fact findings, and overlooked undisputed facts. As mentioned previously, the majority concluded that the State's interest in removing drunk drivers from its roadways outweighed whatever "privacy intrusion that Defendant may have experienced." *Wright*, 2019-NMCA-026, ¶ 14. The majority also concluded that the exigent circumstances of avoiding dissipation of alcohol and the potential that "Defendant might have tried to drive away," weighed in favor of detention. *Id.*

{29}     What the Court of Appeals majority overlooked is that when Thompson arrested Defendant, she posed no danger whatsoever to the motoring public. She was parked in her driveway at home, and her truck was blocked in by Thompson's patrol vehicle. Where was the danger? In analyzing the governmental interests we look at "the degree to which [the arrest] is needed for the promotion" of those interests. *Atwater*, 532 U.S. at 361 (O'Connor, J., dissenting) (internal quotation marks and citation omitted). We agree that the State has an interest in deterring drunk driving and maintaining highway safety, but that interest was not promoted by the arrest of Defendant, who was off of the road, parked at her home, and blocked in. The majority ignores the finding made by the district court that, "but for the illegal detention, Defendant would have gone inside her house before the certified deputy arrived four to five minutes after the illegal detention." The majority also ignored having acknowledged Thompson's own testimony that he did not believe Defendant was attempting or intending to flee, *Wright*, 2019-NMCA-026, ¶ 4 n.1, when it speculated as an "exigency" that "Defendant might have tried to drive away." *Id.* ¶ 14. The majority identified the remaining exigent State interest as the dissipation of alcohol. *Id.* This too is based on speculation, and is but one consideration in the reasonableness analysis. *See State v. Nance*, 2011-NMCA-048, ¶ 23, 149 N.M. 644,

18

253 P.3d 934 (rejecting the conclusion that dissipation of alcohol alone is exigency enough to justify warrantless entry into the home).

{30} We add that the district court's written findings of fact did not state that Thompson had seen Defendant "speeding" or "driv[ing] over the speed limit." *Wright*, 2019-NMCA-026, ¶¶ 13, 14. Further, the district court's written findings of fact did not state facts, discussed in the Court of Appeals opinion, that Thompson had seen Defendant driving "erratic[ally] on a public highway" or "weav[ing] back and forth on the highway" or that Defendant "nearly hit [Thompson's] patrol car." *Id.* ¶¶ 13, 14. Rather, the district court found that Thompson "claimed" his patrol vehicle was almost struck by Defendant's truck as it passed while Thompson was parked off the roadway. Finally, the district court's written findings did not state that Thompson had heard Defendant say anything about consuming alcohol. *See id.* ¶ 14. These omissions from the district court findings should be construed in favor of suppression, not against it. As such, we conclude the majority did not show sufficient deference to the district court's factual findings or construe them as required on appeal. *See Martinez*, 2018-NMSC-007, ¶¶ 12-13, 18 ("On appeal, we must review the totality of the circumstances and must avoid reweighing individual factors in isolation.").

{31}     For the foregoing reasons, we conclude that the Court of Appeals erred in determining that Defendant's arrest was needed for the promotion of the State's interest in deterring drunk driving and maintaining highway safety. *See Wright*, 2019-NMCA-026, ¶ 14. We now turn to the degree to which the arrest intruded upon Defendant's privacy.

{32}     The district court's findings of fact provide that Thompson "closely followed and pursued Defendant up and to her driveway" in a "marked patrol vehicle." He then parked the patrol vehicle behind Defendant and shined a spotlight on Defendant's truck. In uniform and badge, Thompson approached Defendant on foot and instructed her to remain in her truck. Like the defendant in *Rodarte*, 2005-NMCA-141, ¶¶ 2-3, 15, Defendant obeyed these instructions and remained in her truck for four to five minutes. *Wright*, 2019-NMCA-026, ¶ 5. Based on the district court's finding that "but for the illegal detention, Defendant would have gone inside her house," the arrest also intruded upon Defendant's ability to enter her home and move freely within her property.

{33}     In balancing the State's interests with Defendant's privacy interests, on the one hand we have an unauthorized arrest that promoted neither the State's interest in deterring drunk driving nor the State's interest in maintaining highway safety. On the other hand, we have an unauthorized arrest that intruded upon Defendant's

20

privacy by Thompson shining a spotlight into her property, lighting up her parked truck, ordering Defendant to remain in her truck, and preventing her from entering her home.

{34} When viewing the facts found by the district court in the manner most favorable to Defendant as required by the standard of review, *see Martinez*, 2018-NMSC-007, ¶¶ 8, 12, and balancing the degree to which the arrest intruded upon Defendant's privacy with the degree to which the arrest was needed to promote legitimate governmental interests, we conclude that Thompson's actions were constitutionally unreasonable under Article II, Section 10 of the New Mexico Constitution. The evidence and the fruits obtained following the unconstitutional arrest must be suppressed.

## III.   CONCLUSION

{35} We reverse the Court of Appeals and remand the case to the district court for further proceedings in accordance with this opinion.

{36}   **IT IS SO ORDERED**.

_____
**MICHAEL E. VIGIL, Chief Justice**

21

**WE CONCUR:**

 

---

**C. SHANNON BACON, Justice**

 

---

**DAVID K. THOMSON, Justice**