# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-023

Filing Date: May 20, 2011

Docket No. 32,170

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

GREGORY KETELSON,

      Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**William G. W. Shoobridge, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Respondent

Goldberg Segalla, LLP
Matthew S. Lerner
Brian T. Stapleton
Albany, NY

for Amicus Curiae
National Rifle Association of America

## OPINION

**MAES, Justice.**

**{1}** The issue presented in this appeal is whether a police officer can temporarily remove a visible firearm from a vehicle to prevent immediate access to it by an occupant during the short duration of a lawful traffic stop, consistent with the strictures of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Pursuant to our interstitial approach to constitutional analysis, we first address the federal constitutional issue. With respect to the Fourth Amendment, we conclude that the officers had reasonable articulable suspicion permitting them to remove the weapon. Accordingly, their actions were consistent with the federal constitution. With respect to Article II, Section 10, we conclude that the officers' removal of the firearm was a minimal intrusion, which was reasonable given the grave need for officer safety during traffic stops. Thus, we hold that the temporary removal of the firearm was consistent with our state constitution. We reverse the judgments of the Court of Appeals and the district court and remand for further proceedings in accordance with this opinion.

## FACTS AND PROCEDURAL HISTORY

**{2}** The record reflects the following facts found by the district judge during the suppression hearing. On the evening of November 13, 2008, Officer Shane Blevins of the Hobbs Police Department stopped a GMC Jimmy with expired temporary tags. Officer Blevins approached the driver side of the vehicle and informed the driver, Kerri Allen, of the reason for the stop. Meanwhile, Officer Miroslava Belyeu (née Jurado) approached the passenger side of the vehicle, where Gregory Ketelson (Defendant) was seated. Officer Belyeu saw a black nine millimeter handgun lying on the back seat floorboard. Officer Belyeu asked Defendant to step out of the vehicle, and Officer Blevins retrieved the firearm from the back seat floorboard. Neither Defendant nor Ms. Allen was in the vehicle when Officer Blevins retrieved the firearm. After Officer Blevins retrieved the firearm, Defendant signed a card consenting to the search and admitted that the firearm belonged to him.

**{3}** Officer Blevins requested dispatch to run a background check on Defendant. The background check revealed that Defendant had a prior felony conviction in Texas for burglary in 1999. Defendant was placed under arrest as a felon in possession of a firearm in violation of NMSA 1978, Section 30-7-16 (2001).

**{4}** Prior to trial, Defendant moved to suppress the firearm and statements made to the police regarding its ownership. Defendant argued that pursuant to *State v. Garcia*, 2005-NMSC-017, ¶ 29, 138 N.M. 1, 116 P.3d 72, an officer does not have authority to enter a car and seize an object absent a search warrant, consent, or exigent circumstances. The State responded that the entry into the vehicle and removing the firearm were lawful as a "minimal intrusion" necessary for officer safety while the officers determined that Defendant was a felon. The district court found that the State did not make a showing sufficient to support exigent circumstances; rather, it found that both Defendant and the driver of the car were "at all times cooperative, and they created no apparent threat or imminent danger to life or serious damage to property." Accordingly, the district court granted the motion to suppress, noting that non-felons may legally carry loaded handguns in private automobiles,

2

and thus, the State must make some showing beyond the mere presence of a firearm in the car before officers effect a warrantless "seizure."

**{5}** The State appealed to the Court of Appeals. *See* NMSA 1978, Section 39-3-3(B)(2) (1972) (permitting appeal upon a district court's order to suppress evidence). In a memorandum opinion, the Court of Appeals affirmed the district court, determining that "there was no proper basis upon which to justify the warrantless seizure of the firearm." *State v. Ketelson*, No. 29,876, slip op. at 3 (N.M. Ct. App. Dec. 28, 2009). Relying on *State v. Bomboy*, 2008-NMSC-029, ¶ 17, 144 N.M. 151, 184 P.3d 1045, and *Garcia*, 2005-NMSC-017, ¶ 31, the Court held that either exigent circumstances or another exception to the warrant requirement was required before an officer may seize an object in plain view from a vehicle and found no such exception applicable here. *Ketelson*, No. 29,876, slip op. at 3, 5.

**{6}** The Court rejected several bases for exigent circumstances. It noted that the driver's allegedly nervous behavior after the stop could support exigent circumstances, which would provide a basis for the warrantless seizure of the firearm, but deferred to the district court's finding that no exigencies were present. *Ketelson*, No. 29,876, slip op. at 3-4. The Court also noted that evidence of a crime in plain view could support exigent circumstances pursuant to *Bomboy*. *Ketelson*, No. 29,876, slip op. at 6. *Bomboy* held that incident to a lawful traffic stop an officer may seize an object in plain view provided the officer has probable cause to believe the object is evidence of a crime. 2008-NMSC-029, ¶ 17. However, the Court distinguished the present stop from *Bomboy*, concluding that in this case the officers did not have probable cause to believe the firearm was evidence of a crime because they only learned *after* it had been removed from the car that Defendant was a felon. *Ketelson*, No. 29,876, slip op. at 6.

**{7}** Finally, the Court rejected officer safety as a potential basis for exigent circumstances. *Id.* at 4. It found unpersuasive the State's argument that removing the firearm from the car was a "minimal intrusion" justified by the needs of officer safety. *Id.* The State argued that "a weapon in plain view during a traffic stop creates a reasonable suspicion that the vehicle's occupants are armed and dangerous, and thus is subject to seizure to ensure officer safety." *Id.* at 5. The State grounded its argument in federal authority, which permits an officer to disarm a suspect during an investigatory detention when the officer has a reasonable suspicion that the suspect is armed and dangerous. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 111-12 (1977) (concluding that, under the principles of *Terry*, an officer could conduct a protective frisk for weapons after observing a bulge in the suspect's jacket). To the Court of Appeals, accepting the State's argument was tantamount to establishing a presumption of exigent circumstances whenever an officer observed a firearm in a lawfully stopped vehicle. *Ketelson*, No. 29,876, slip op. at 4-5. It declined to adopt such

3

a presumption, noting that New Mexico had not adopted other "bright line" presumptions from federal law, such as the federal automobile exception. *Id.* at 5; *see State v. Weidner*, 2007-NMCA-063, ¶ 16, 141 N.M. 582, 158 P.3d 1025.

**{8}** We granted the State's petition for writ of certiorari pursuant to NMSA 1978, Section 34-5-14(B) (1972) and Rule 12-502 NMRA to determine whether it is unreasonable under the state and federal constitutions for a police officer to remove a visible firearm from a vehicle subject to a lawful traffic stop.

## DISCUSSION

### I. Standard of Review

**{9}** Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. Because the district court "is in a better position to judge the credibility of witnesses and resolve questions of fact, the factual analysis should be viewed in a light favorable to the prevailing party." *Garcia*, 2005-NMSC-017, ¶ 27.

### II. Interstitial Approach and Preservation

**{10}** "Because both the United States and the New Mexico Constitutions provide overlapping protections against unreasonable searches and seizures, we apply our interstitial approach." *State v. Rowell*, 2008-NMSC-041, ¶ 12, 144 N.M. 371, 188 P.3d 95 (citing *State v. Gomez*, 1997-NMSC-006, ¶¶ 19-23, 122 N.M. 777, 932 P.2d 1). The interstitial approach requires that we first consider "whether the right being asserted is protected under the federal constitution." *Gomez*, 1997-NMSC-006, ¶ 19. If the right is protected by the federal constitution, then the state constitutional claim is not reached. *Id.* If not, we next consider whether the New Mexico Constitution provides broader protection, and we may diverge from federal precedent for three reasons: "a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." *Gomez*, 1997-NMSC-006, ¶ 19. As we recently explained in *State v. Leyva*, a defendant must properly preserve his argument under the state constitution in order for us to consider it on appeal. 2011-NMSC-009, ¶ 36, ___ N.M. ___, 250 P.3d 861. Thus, as an initial matter, we must determine whether our analysis is confined to the Fourth Amendment or whether Defendant properly preserved his argument under Article II, Section 10.

**{11}** Varying preservation requirements apply, depending on whether the state constitutional provision has "previously been interpreted more expansively than its federal counterpart." *Leyva*, 2011-NMSC-009, ¶ 49. Where the state constitutional provision has already been interpreted to provide broader protection than its federal counterpart, "trial counsel must develop the necessary factual base and raise the applicable constitutional *provision* in trial court." *Id.* However, where the state constitutional provision has not been

4

determined to offer broader protection, more stringent preservation requirements apply. *See id.* ("Where the provision has never before been addressed under our interstitial analysis, trial counsel additionally must argue that the state constitutional provision should provide greater protection, and suggest reasons as to why . . . ."). Our precedents have clearly established that Article II, Section 10 offers broader protection than the Fourth Amendment. *Leyva*, 2011-NMSC-009, ¶ 50. Thus, we apply the general requirements of Rule 12-216(A) to determine whether Defendant "develop[ed] the necessary factual base and raise[d] the applicable constitutional *provision*" at the trial level. *Leyva*, 2011-NMSC-009, ¶ 49.

**{12}** In *Leyva*, we determined that the defendant had preserved his argument under the state constitution by pleading both the Fourth Amendment and Article II, Section 10 in his motion to suppress and "developing a factual record in his motion and at the suppression hearing." *Id.* ¶ 50. Here, Defendant plead both the Fourth Amendment and Article II, Section 10 in his motion to suppress; moreover, Defendant developed a factual record in his motion and at the hearing. *See Gomez*, 1997-NMSC-006, ¶ 27 (concluding that argument under the state constitution was preserved where testimony at the suppression hearing discussed the circumstances of the search). Accordingly, Defendant's Article II, Section 10 argument was preserved.

**{13}** We also address an additional preservation issue. In his motion to suppress, Defendant challenged only the officers' decision to remove the handgun from the vehicle after they had observed it. He did not challenge the propriety of the traffic stop, nor could he, because the stop was lawful; Officer Blevins pulled over the vehicle in which Defendant rode as a passenger because its tags were expired. *See* NMSA 1978, § 66-3-18(C) (2007) (requiring display of valid vehicle registration); *see also Mimms*, 434 U.S. at 109 (holding there was a lawful reason to conduct a traffic stop where vehicle tags were expired, in violation of state law). Moreover, Defendant did not challenge the officers' subsequent actions, namely running the weapon through a registry to determine whether it was stolen and running the background check that ultimately determined that Defendant was a felon. Thus, we do not reach the issue of whether officers may conduct further investigation when they temporarily remove a firearm from a vehicle as a safety precaution. *See generally Arizona v. Hicks*, 480 U.S. 321 (1987) (holding that the officer, performing an exigent circumstances search of a residence in response to a shooting, violated the Fourth Amendment by moving stereo equipment observed during the search in order to reveal its serial number). Rather, our sole focus is the propriety of the officers' removal of the gun from the vehicle. Thus, pursuant to our interstitial approach, we first address the Fourth Amendment and then turn to Article II, Section 10. *State v. Garcia*, 2009-NMSC-046, ¶ 13, 147 N.M. 134, 217 P.3d 1032; *Gomez*, 1997-NMSC-006, ¶ 19.

## III. Fourth Amendment

**{14}** The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const. amend. IV.  Under the Fourth Amendment, a search or seizure conducted without a warrant supported by probable cause is "presumptively unreasonable," unless the officer's conduct fell within one of the well-defined exceptions. *United States v. Karo*, 468 U.S. 705, 717 (1984).  In this case, there was no  warrant, so our analysis focuses on whether the officers' conduct falls within one of the well-defined exceptions.  *See id.*

**{15}**  In *Terry*, the U.S. Supreme Court explained that one such exception provides

> that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.  Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

392 U.S. at 30-31.  This exception was invoked in *Mimms*.  434 U.S. at 111-12.  There, an officer conducting a traffic stop observed a bulge protruding from the suspect's sports jacket and "[f]earing that the bulge might be a weapon, the officer frisked [the suspect] and discovered in his waistband a .38-caliber revolver loaded with five rounds of ammunition." *Id.* at 107.  Because, under *Terry*, an officer may "conduct[] a limited search for weapons" upon a reasonable suspicion that the "suspect might be armed and presently dangerous," the Court concluded that the limited protective search conducted by the officer was constitutional. *Mimms*, 434 U.S. at 111-12.

**{16}**  In order to determine whether a limited protective search is proper, the "critical question" is whether the officer had a "particularized and objective basis" for his suspicion that the suspect might have been armed and dangerous.  *United States v. Jones*, 606 F.3d 964, 967 (8th Cir. 2010) (per curiam) (internal quotation marks and citation omitted).  Courts assess the totality of the circumstances in order to determine whether the officer maintained reasonable suspicion in order to support the frisk.  *United States v. Tinnie*, 629 F.3d 749, 751 (7th Cir. 2011).  In viewing the totality of the circumstances, the court "must look at the facts objectively." *Id.* at 753.

**{17}**  We note that the federal courts have long stressed the importance of officer safety and the danger firearms pose during an officer interaction with a suspect.  As the U.S. Supreme Court has observed, "[f]irearms are dangerous, and extraordinary dangers sometimes justify unusual precautions." *Florida v. J.L.*, 529 U.S. 266, 272 (2000).  The federal courts are keenly aware that traffic stops pose particular dangers to police officers.

"An officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped. Every traffic stop, after all, is a confrontation." *United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001) (en banc), *holding modified on other grounds by United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007). With these considerations in mind, we turn to the traffic stop during which the officers took possession of Defendant's gun.

**{18}** After Officer Blevins stopped the vehicle in which Defendant rode as a passenger, Officer Belyeu observed a gun on the back floorboard of the vehicle, directly behind Defendant. Officer Belyeu alerted Officer Blevins to the presence of the gun. Both the driver and Defendant were outside of the vehicle when Officer Blevins reached into the passenger compartment of the vehicle to secure the firearm and unload the ammunition; however, neither was handcuffed nor restrained.

**{19}** *Terry* does not require certainty on the part of the officer that a suspect is armed and dangerous in order to conduct a limited protective search; rather, it requires only that the suspect "may" be armed and dangerous. 392 U.S. at 30. Critically, in this case, the gun was visible to the officers during the traffic stop, and thus the officers were certain that Defendant had access to a firearm. Additionally, neither the Defendant nor the driver was restrained, and thus the risk that one of them would access the firearm was especially potent. Under such circumstances, Officer Blevins could constitutionally remove the firearm from the vehicle because he possessed a reasonable belief based on specific and articulable facts which warranted him in believing that Defendant was "armed and thus posed a serious and present danger to [his] safety." *Mimms*, 434 U.S. at 112; *see Terry*, 392 U.S. at 21.

## IV. Article II, Section 10

**{20}** Pursuant to our interstitial approach, we next turn to Article II, Section 10 of the New Mexico Constitution. *See Garcia*, 2009-NMSC-046, ¶ 13. Article II, Section 10 ensures that

> [t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

The key inquiry under Article II, Section 10 is reasonableness. *See Campos v. State*, 117 N.M. 155, 157, 870 P.2d 117, 119 (1994) ("[T]he ultimate question is whether the search and seizure was reasonable." (internal quotation marks and citation omitted)); *State v. Attaway*, 117 N.M. 141, 149, 870 P.2d 103, 111 (1994), *modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶¶ 13-20, 138 N.M. 9, 116 P.3d 80. The constitutional provision "expresses the fundamental notion that every person . . . is entitled to be free from unwarranted governmental intrusions." *State v. Gutierrez*, 116 N.M. 431, 444, 863 P.2d

7

1052, 1065 (1993). Accordingly, reasonableness depends on the balance between the public interest and the individual's interest in freedom from police intrusion upon personal liberty.

**{21}** In this case, the facts presented require us to undertake a thorough exploration of the competing interests at stake, individual rights and officer safety. *See Gomez*, 1997-NMSC-006, ¶ 19 (noting that distinctive state characteristics may provide a reason to depart from the federal analysis); *State v. Dees*, 100 N.M. 252, 253, 669 P.2d 261, 262 (Ct. App. 1983) (noting that New Mexico's constitutional protection of firearms is "unique"). Our Article II, Section 10 jurisprudence has long focused on concepts of reasonableness, and we conclude that through the lens of reasonableness, we can properly explore the competing interests at stake here.

**{22}** In order to determine whether Officer Blevin's removal of the gun from the vehicle was reasonable, we first examine the public interest supporting his action. The State identifies officer safety as the public interest which justifies the removal of the gun from the vehicle. The State explains that police officers perform a public service, and therefore, relying on *Terry*, the State argues that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." 392 U.S. at 23. The State also highlights the dangers inherent in traffic stops. The State contends that when an officer confronts a motorist, the officer enters an uncertain situation, not knowing the motorist's intentions, and as a result the officer is exposed to a grave risk of assault.

**{23}** Against concerns for officer safety, we balance the individual's interest in freedom from police intrusion upon personal liberty. In New Mexico, individuals may carry a gun "in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property," without fear of criminal prosecution. NMSA 1978, § 30-7-2(A)(2) (2001); *see* N.M. Const. art. II § 6. Even though this was not a traditional seizure of evidence or contraband, even a temporary moving of the firearm constituted, to some degree, an interference with Defendant's possessory interest. *See Bomboy*, 2008-NMSC-029, ¶ 9 (recognizing that seizure of methamphetamine in plain view in a car affected a property interest). Here, unlike the seizure in *Bomboy*, however, the retrieval of the gun from the vehicle during the limited context of the traffic stop was at most a minimal interference with the suspect's possessory interest.

**{24}** Two considerations lead us to conclude that the interference with the suspect's possessory rights is minimal. First, the interference is minimal because the officer holds the firearm for a limited period. The interference is subject to temporal constraints on the length of a traffic stop. *See State v. Duran*, 2005-NMSC-034, ¶ 35, 138 N.M. 414, 120 P.3d 836 ("The length of the detention should be reasonably limited to the time it takes to complete the underlying justification for the stop."), *overruled on other grounds by Leyva*, 2011-NMSC-009, ¶ 62. Thus, the interference with the suspect's possessory interest in the gun is constrained by the mandatory brevity of a lawful traffic stop. Second, we consider the officer's retrieval of the gun from the vehicle to be a minimal intrusion to the suspect's

possessory interests because the officer's actions are unlikely to disturb any legitimate use of the firearm.

**{25}** We proceed to balance the relevant interests. Concerns for officer safety are undoubtedly legitimate and weigh heavily in the reasonableness calculus. We have recognized that officers face inordinate risks when they are conducting traffic stops. *See State v. Vandenberg*, 2003-NMSC-030, ¶ 34, 134 N.M. 566, 81 P.3d 19. Against these concerns, we must weigh the individual's interest in freedom from governmental intrusion upon a personal possessory interest. The officer's removal of the firearm from the vehicle was at most a minimal intrusion upon a personal possessory interest, as it was limited in duration and did not interfere with any legitimate use for the firearm. Accordingly, because the need for officer safety outweighs the minimal intrusion upon a personal possessory interest occasioned by the officer's retrieval of the firearm from the vehicle, it is reasonable, pursuant to Article II, Section 10, for an officer to temporarily take possession of a visible firearm during a lawful traffic stop.

**{26}** We recognize that the course we chart today, which focuses so heavily on reasonableness, may appear inconsistent with some of the language employed in *Garcia*. Indeed, both the Court of Appeals and the district court relied upon it in their decisions below. *See Ketelson*, No. 29,876, slip op. at 5-6. In *Garcia*, officers conducting a traffic stop observed "what appeared to be a gun in a holster protruding from underneath the rear of the passenger seat." 2005-NMSC-017, ¶ 4. The officers removed the driver and passenger from the vehicle and patted them down for weapons. As the officers retrieved the firearm from the vehicle, they happened upon an open beer bottle. *Id.* As a result, the passenger was prosecuted on an open container charge and on a felon in possession charge. *See id.* ¶ 5. At the inception of the traffic stop, the passenger left the car prematurely and then refused to follow the officers' commands to return to the vehicle. We held that this aggressive behavior constituted exigent circumstances, and thus, the officers were entitled to a limited search of the car, including seizing the firearm. *Id.* ¶ 32. In the course of our analysis, we also stated that

> [t]here must be a reasonable suspicion [that] the suspect is both armed *and* dangerous. An individual in a car with a weapon, by itself, does not create exigent circumstances. In New Mexico it is lawful for a non-felon to carry a loaded handgun in a private automobile or other private means of conveyance. Because of that, it would be anomalous to treat the mere presence of a firearm in an automobile as supporting a reasonable suspicion that the occupants are inclined to harm an officer in the course of a routine traffic stop.

*Id.* ¶ 31 (internal quotation marks and citations omitted). This dicta was part of the discussion of the issue presented by the parties in *Garcia*, whether the circumstances justified a finding of particularized reasonable suspicion to believe that a particular person was dangerous. It has no applicability to the situation presented here, in which an officer

9

takes a routine precaution of separating any person from a deadly weapon during the brief duration of a traffic stop. Moving the weapon temporarily is no less reasonable a choice than directing the occupants to step away from the vehicle temporarily. Although either may technically be called "seizures," they are both minimal intrusions on possessory or liberty interest that are equally reasonable under the circumstances.

{27}    In this case, we are mindful of the grave need for officer safety in the midst of the dangers and uncertainties that are always inherent in traffic stops. We conclude that removing Defendant's firearm from the vehicle in order to ensure that it was beyond the reach of any of the occupants during the stop was a reasonable and minimal intrusion, which does not outweigh legitimate concerns of officer safety. Our decision in this case, which addresses a temporary separation of a firearm from the occupants of a car during the duration of a traffic stop, does not depend on any requirement of particularized suspicion that an occupant is inclined to use the firearm improperly. As with other warrant exception cases, our touchstone is the requirement of Article II, Section 10 of our New Mexico Constitution that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures . . . ." Under the circumstances of this case, it was constitutionally reasonable for the officer to remove the firearm from the vehicle. Therefore, the evidence should not have been suppressed.

**CONCLUSION**

{28}    For the foregoing reasons, the judgment of the Court of Appeals is reversed, and we remand the case to the district court for further proceedings in accordance with this opinion.

{29}    **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *State v. Ketelson*, Docket No. 32,170**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CG | Constitutional Law, General |
| CT-FA | Fourth Amendment |
| CT-IT | Interstitial Analysis |
| CT-NM | New Mexico Constitution, General |
| CT-SU | Suppression of Evidence |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-MR | Motion to Suppress |
| CA-SZ | Search and Seizure |