This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: July 15, 2021**

**No. S-1-SC-37673**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant

v.

**VICTOR ORTIZ,**

Defendant-Appellee

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Walter M. Hart III, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
John Charles Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## DECISION

**BACON, Justice.**

**{1}** "Our resolution of this [interlocutory] appeal turns on the standard of review that applies to a district court's findings of fact concerning a motion to suppress evidence." *State v. Martinez*, 2018-NMSC-007, ¶ 1, 410 P.3d 186. Under *Martinez*, we "defer to the district court's findings of fact if supported by substantial evidence and . . . view the facts in the light most favorable to the prevailing party." *Id.* ¶ 3; *see State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

**{2}** Defendant Victor Ortiz faces an open charge of murder with a potential sentence of life imprisonment. On interlocutory appeal from the Second Judicial District, the State challenges the district court's grant of Defendant's motion to suppress all statements made during his custodial interrogation ("interview"). The State argues that the grant of Defendant's motion to suppress constituted clear error and requests this Court to reverse the district court's order. The State further argues that the district court lacked substantial evidence for its factual findings regarding Defendant's capacity to understand and waive his *Miranda* rights and that Defendant made a knowing and intelligent waiver of those rights.

**{3}** We reject both of the State's arguments and affirm the district court's grant of the motion to suppress. First, the record demonstrates that substantial evidence supported each of the district court's findings and the court properly applied the law to those findings. Second, the State did not meet its burden on appeal to show a lack of substantial evidence for the district court's findings adverse to the State's arguments. Because these issues are sufficiently addressed by New Mexico precedent, we exercise our discretion to resolve this case by way of a non-precedential decision under Rule 12-405(B)(1) NMRA.

## I.    BACKGROUND

### A.    Interview

**{4}** Defendant was arrested for the July 20, 2017, stabbing death of taxi driver Kahlil Jabbour. Defendant's arrest in the early hours of July 21, 2017, followed an approximately five-hour custodial interview in an Albuquerque Police Department (APD) substation, conducted primarily by Detective Leah Acata ("Acata"). At detectives' request, APD psychiatrist Dr. Nils Rosenbaum ("Rosenbaum") attended the interview and conducted initial questioning of Defendant "to provide an opinion regarding Defendant's capacity to participate in the interview." The audio-video recording of the interview was later entered as evidence at the suppression hearing and cited by the district court in its order.

**{5}** Before *Miranda* advisement and questioning began, Defendant told Detective Terra Juarez, "I'm just going to say a prayer, okay?" and began speaking aloud with eyes closed and head moving. Though much of Defendant's recorded speech at this point is unclear, audible portions include, "Lord Jesus . . . power and wisdom . . . for my words to come out right . . . you know the truth as well. . . ." Upon entry of Acata and Rosenbaum, Defendant did not change his demeanor or conduct, and there was no clear division between his prayer and the ensuing silence.

**{6}** Eventually Rosenbaum introduced himself and asked Defendant questions "to get a sense of how [Defendant was] doing and make sure [Defendant] sort of underst[ood] what[ was] going on." Asked if he had talked with a psychiatrist before, Defendant referenced "PTSD issues" and became emotional, describing himself as "upset" at having been "pushed away" from treatment. Defendant's emotions and pitch varied as he then referenced "trust issues [as] . . . I think I was told to go to Regional

Trauma Center . . . memory's not too . . . memory's fucked . . . I went there, but it was closed because it was a Sunday." Rosenbaum asked whether Defendant had been hearing voices or wanting to harm himself. Defendant responded yes to both questions but explained that this had not happened in the previous twenty-four hours. Rosenbaum then concluded to the detectives, "I think you guys can ask him the questions and I can just chime in to make sure."

{7}     Acata then advised Defendant of his *Miranda* rights, asking Defendant after each advisement if he understood the relevant right. Defendant replied "yes" to each while appearing to keep his eyes closed. Acata twice checked that Defendant was awake. When asked to explain each right, Defendant restated them but, as the district court found and the State does not contest, never made an express waiver of his rights.

{8}     Over the course of the interview, Defendant focused on topics that were not obviously relevant to Acata's questions about the homicide. Defendant raised each of the following topics multiple times:  "[T]he [Mexicans] at Burger King . . . killed two of my dogs"; "[A]pps on my phone are tracking me . . ."; "[Taxi drivers on walkie-talkies] said 'Greyhound has already left' . . . too much of a coincidence"; "How can the [finger]nail from the girl from Metro PC be in my driveway?"; and "[The Blacks and Mexicans] have to have a whiz kid to do this. . . . That's what I mean by the Kirk [neighborhood] is so organized[.]" Defendant's commentary included seemingly off-topic references to Laverne and Shirley, Tupac, Lil Wayne, the NAACP, the Illuminati, demons, devils, *Star Wars*, *I, Robot*, and intruders tampering with his marijuana plants and home stereo.

{9}     Over the course of the interview, Acata asked Defendant numerous times, "How does that tie to tonight?" On multiple other occasions, Defendant noted that he became "sidetracked" or asked, "where was I?" On multiple occasions when Acata asked refocusing questions about the homicide itself, Defendant replied "You're rushing me" or emphasized that Acata needed instead to see the "bigger picture," then returned to seemingly off-topic commentary. Approximately four hours after the interview began, Acata told Defendant that he "took three hours and told me the same thing over and over and over," to which Defendant replied, "did I?"

{10}     Over the course of the interview, Defendant exhibited erratic behavior. When Rosenbaum asked what was making him "sad," Defendant appeared increasingly agitated and angry in stating "I said '*upset*' . . . Don't twist my words around. Don't do that! That'll trigger me. That'll trigger me. Don't do that." Asked if he needed more water, Defendant appeared to refer to a pre-interview request for water in saying "they're like, 'hold on, wait, wait, wait, wait, wait, wait, wait, . . . *WAIT*!' Wait for *what*?! Wait for it's too late?!" Subsequently Defendant stated, "my sister hates on me . . ." while crying; stated, "I asked you for a lawyer, don't get mad at me!"; appeared to lose his train of thought and sit silently until prompted; and made unexplained outbursts and comments including while alone in the room.

{11}     At the conclusion of the interview, conducted entirely without counsel, Defendant was arrested.

## B.     Suppression Hearing and Order

**{12}**   On November 16, 2018, Defendant filed a motion to suppress all statements made in the interview due to not knowingly, intelligently, and voluntarily waiving his *Miranda* rights.

**{13}**   The State's evidence at the suppression hearing consisted of the recorded interview and of Rosenbaum's testimony that Defendant possessed the capacity to consent to waive his *Miranda* rights. The State argued that this evidence met its burden by a preponderance to show that Defendant's statements in the interview were given knowingly, voluntarily, and intelligently.

**{14}**   The district court granted the motion, concluding that the State did not meet its burden. In its written order, the district court found under the totality of the circumstances that Defendant's mental condition at the time of the interview "revealed that he had no awareness of his rights and no awareness of the consequences he faced by abandoning these rights. Additionally, there was no showing that Defendant actually waived his rights at any point."

**{15}**   At the suppression hearing and in its written order, the district court explained at length the factual findings and reasoning underlying its conclusion. In its written order, the court's factual findings regarding capacity included that Defendant "behave[d] erratically, [wa]s fixated on bizarre topics, [wa]s incapable of answering most, if not all, of [Acata's] questions[,] and repeat[ed] himself on a variety of unrelated topics[,] . . . [n]one of [which we]re remotely related to the conversation [Acata wa]s attempting to have with Defendant." The court's explanation included its analysis of Rosenbaum's conclusions, which it found to be "vague, conclusory, and frankly st[anding] in stark contrast to the [district c]ourt's observations of Defendant's conduct and statements in his interview."

**{16}**   The State filed a motion to reconsider, which was denied. The State then filed for interlocutory appeal of the grant of the motion to suppress. *See State v. Smallwood*, 2007-NMSC-005, ¶ 10, 141 N.M. 178, 152 P.3d 821 ("[I]t is clear to us that the [L]egislature conferred this Court with jurisdiction over a criminal defendant's interlocutory appeal in cases where a sentence of life imprisonment or death *could be* imposed."). The State asks this Court to reverse the district court's order granting Defendant's motion to suppress all statements made in the interview.

## II.     DISCUSSION

**{17}**   The State argues that the district court committed clear error in making findings of fact not supported by substantial evidence and that Defendant made a knowing and intelligent waiver of his constitutional rights.

## A.      Standard of Review and Applicable Law

**{18}** "'Appellate review of a motion to suppress presents a mixed question of law and fact.'" *Martinez*, 2018-NMSC-007, ¶ 8 (quoting *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957).

**{19}** "'First, we look for substantial evidence to support the district court's factual finding[s], with deference to the district court's review of the testimony and other evidence presented.'" *Id.* (alteration omitted) (quoting *State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Filemon V.*, 2018-NMSC-011, ¶ 17, 412 P.3d 1089. "Conflicts in the evidence, even within the testimony of a witness, are to be resolved by the fact finder at trial." *Jason L.*, 2000-NMSC-018, ¶ 10 (citing *State v. Bloom*, 1977-NMSC-016, ¶ 5, 90 N.M. 192, 561 P.2d 465).

**{20}** "'We then review the application of the law to those facts,'" *Martinez*, 2018-NMSC-007, ¶ 8 (quoting *Yazzie*, 2016-NMSC-026, ¶ 15), "viewing the facts 'in a manner most favorable to the prevailing party,'" *Filemon V.*, 2018-NMSC-011, ¶ 17 (quoting *Jason L.*, 2000-NMSC-018, ¶ 10). "The district court's application of the law to the facts is a question of law that we review de novo." *Id.* (internal quotation marks and citation omitted).

**{21}** The right against self-incrimination arises from the Fifth Amendment to the United States Constitution and is applied to the states through the Fourteenth Amendment. *Id.* ¶ 18. In order to protect this right, law enforcement officials conducting a custodial interrogation must advise a suspect "that he or she has a right to remain silent, that any statement he or she does make may be used as evidence against him or her, and that he or she has a right to the presence of an attorney, either retained or appointed." *State v. Martinez*, 1999-NMSC-018, ¶ 13, 127 N.M. 207, 979 P.2d 718 (alterations omitted) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)). "Prior to questioning the individual, the police must first obtain a knowing, intelligent, and voluntary waiver of these rights." *Id.* (citing *Miranda*, 384 U.S. at 444). The inquiry into whether an accused has voluntarily, knowingly, and intelligently waived his *Miranda* rights has "two distinct dimensions." *State v. Fekete*, 1995-NMSC-049, ¶ 49, 120 N.M. 290, 901 P.2d 708 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, *the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it*.

*Id.* (emphasis added).

**{22}** "In response to a defendant's motion to suppress a statement made to police during a custodial interrogation, the State must demonstrate by a preponderance of

evidence that [the] defendant knowingly, intelligently, and voluntarily waived his or her constitutional rights under *Miranda*." *State v. Barrera*, 2001-NMSC-014, ¶ 22, 130 N.M. 227, 22 P.3d 1177. "Courts evaluate the totality of the circumstances and the particular facts, including consideration of the mental and physical condition, background, experience, and conduct of the accused, as well as the conduct of the police, in determining whether the State has successfully carried its burden[.]" *Martinez*, 1999-NMSC-018, ¶ 14 (internal quotation marks and citation omitted). "Every reasonable presumption against waiver is indulged." *Id.* (internal quotation marks and citation omitted).

{23}    In sum, our standard of review requires the State to demonstrate that the district court, applying the totality of the circumstances, committed clear error in making the factual findings upon which it based its conclusion that the State failed to prove by a preponderance of the evidence that Defendant made a knowing and intelligent waiver.

**B.      The State does not meet its burden to show that the district court committed clear error in making its factual findings**

{24}    The State alleges clear error in four aspects of the district court's factual findings upon which the court based its conclusion that Defendant lacked the requisite awareness to make a knowing and intelligent waiver. The State claims that the district court erroneously found that Defendant's religious behavior and beliefs constituted "bizarre" and "striking" behavior; that Defendant had very recently sought but been turned away from treatment for PTSD; that on the night of the events in question and at the time of the interview, Defendant had been hearing voices when no one was around; and that Defendant was "fixated on bizarre topics" that were not "remotely related to the conversation" with Acata. We address these claims in turn.

**1.      The State does not demonstrate that the district court erroneously found that Defendant's religious behavior and beliefs constituted "bizarre" and "striking" behavior**

{25}    The State first argues that Defendant's "statements relative to his religious beliefs . . . appear[] to have [been] interpreted" by the district court "as supporting Defendant's irrationality and inability knowingly and intelligently to waive his constitutional rights." The State claims that the district court concluded that "Defendant's religious behavior and beliefs constituted 'bizarre' and 'striking' behavior." The State argues that a view of religious beliefs as irrational should not be applied in finding a lack of capacity to waive one's rights.

{26}    The State points to the district court's characterization at the suppression hearing of Defendant's initial prayer as "mumbling, unintelligibl[e] mumbling" that continues when Acata enters with Rosenbaum "as if no one has entered the room, which is *striking*[, and e]veryone sits in there sort of quietly until [D]efendant stops mumbling." (emphasis added). The State similarly points to the district court's references in its written order to Defendant "mumbling and behaving in a *bizarre* fashion in the interview room alone" and "continuing to mumble to himself" when Acata and Rosenbaum enter.

(emphasis added). In addition, the State cites to the written order to claim that the district court "found Defendant's belief in and references to the 'Devil' to be a '*bizarre* topic.'" (emphasis added).

**{27}** The State's argument here fails for three reasons. First, the district court made no reference at the hearing or in the written order to the content, religious or otherwise, of Defendant's perceived "mumbling" during the first minutes of the interview. To the contrary, the court's perception of "unintelligible mumbling" indicates its inability to understand that content and thus refutes the State's argument that the court drew adverse conclusions based on that content. We judicially notice that portions of Defendant's comments at this point in the recording were marginally intelligible. In this regard, the district court's characterization of Defendant's "mumbling" indicates that the court did not draw adverse inferences from its content, and any error in the district court's transcription is *de minimis*.

**{28}** Second, the record does not support an inference that the district court based its finding of "bizarre" and "striking" behavior on Defendant's religious beliefs. At the hearing, as discussed above, the court described as "striking" the fact that Defendant "continu[ed] to mumble to himself as if no one ha[d] entered the room" when Acata and Rosenbaum entered. The district court's order noted Defendant "behaving in a bizarre fashion in the interview room alone" without reference to religion. In its subsequent non-exclusive list of Defendant's "bizarre . . . unrelated topics," the court's order includes "demons" and "devils" along with eleven secular topics, which provides minimal support for the State's claim. In its reply brief, the State acknowledges that the district court "did not expressly reference Defendant's religious beliefs as the basis for its ruling," but asserts that the conclusion otherwise is "inescapable." However, the State offers no further evidence to support this claim. In sum, the record indicates that the district court's characterization of Defendant's behavior as "bizarre" and "striking" neither focuses nor relies on his religious beliefs and conduct.

**{29}** Third, the State provides no other support for an inference that the district court viewed Defendant's religious beliefs negatively or drew adverse conclusions from those beliefs. Without more and under deferential review, we hold that the State has not met its burden to show that the district court's conclusions were based on an improper or erroneous factual finding regarding Defendant's religious beliefs or conduct.

**2.    The State does not demonstrate that the district court erroneously found that Defendant had very recently sought but been turned away from treatment for PTSD**

**{30}** The State argues that the suppression order included the erroneous finding that Defendant "had *recently* unsuccessfully sought treatment for his PTSD and had been *recently* turned away from such treatment." The State alleges that Defendant actually stated that he had sought such treatment "at some unknown time in the past . . . on '*a* Sunday'" rather than on the *most recent* Sunday.[1] The State argues that the district

---

1We take judicial notice that July 20, 2017, was a Thursday.

court committed clear error by applying this alleged finding in reaching its "determination that Defendant did not knowingly and intelligently waive his constitutional rights."

**{31}** The State's sole evidence for the district court's alleged finding is a single sentence in the suppression order: "Defendant is upset, accuses [Rosenbaum] of twisting his words around, continues to behave erratically, talks about hearing voices, not sleeping[,] and attempting to be admitted to the 'Regional Trauma Center' for his [PTSD] issues but not being admitted as they were closed on Sunday." The State does not show that the district court found that Defendant had referred to the most recent Sunday rather than to Sundays generally, nor that recency of PTSD treatment was dispositive to the district court's finding under the totality of the circumstances. Without more, this isolated reference does not support a claim of clear error regarding the district court's alleged finding of recency of treatment for Defendant's PTSD. For the foregoing reasons, the State's argument here fails.

### 3. The State does not demonstrate that the district court erroneously found that on the night of the events in question and at the time of the interview Defendant had been hearing voices when no one was around

**{32}** The State argues that the district court made an erroneous factual finding that Defendant had been hearing voices "*on the night of the events in question* and at the time of the interview." The State argues that Defendant actually stated that "it's been a while" and that he had not heard voices in the prior twenty-four hours. The State appears to argue, as with its PTSD claim, that the court committed clear error by applying this alleged finding in reaching its determination that Defendant did not knowingly and intelligently waive his constitutional rights.

**{33}** The State's sole evidence for the district court's alleged finding is the court's description at the suppression hearing of Defendant "talk[ing] about *hearing voices*[,] and then the detectives go right into his Miranda rights, despite the fact that [D]efendant is behaving in a very unusual way." (emphasis added). Without further evidence, the State asserts that the district court's "factual inference that Defendant had been hearing voices at the time of the interview or even recently [was] not supported by substantial evidence." The State's assertion suggests that the district court inferred that Defendant's unusual behavior at that point in the interview reflected his currently or recently hearing voices.

**{34}** The State does not show that the district court made such an inference, much less that such an inference was dispositive to the court's conclusion regarding competency. At the suppression hearing, the district court made no other references to Defendant hearing voices but made numerous other references to Defendant's unusual behavior. The court's written order refers only once to Defendant hearing voices, within the sentence discussed above regarding PTSD, whereas the order refers multiple times to Defendant's bizarre or erratic behavior. Without more, the State's citation to this isolated reference does not support a claim of clear error. For the foregoing reasons, the State's argument here fails.

**4. The State does not demonstrate that the district court erroneously found that Defendant was "fixated on bizarre" and "unrelated topics" that were not "remotely related to the conversation" with Acata**

{35}   The State argues that the district court committed clear error in finding "that Defendant's discussion of a number of subjects and topics was bizarre and non-contextual." The State argues to the contrary that "everything Defendant discussed fit into a rational (albeit paranoid) explanation of the events leading to his stabbing the [decedent]." In support, the State offers an explanation for how each of the following topics "were not 'bizarre' and did not provide substantial evidence" for the district court's finding: the "big picture" of gang organization in his neighborhood; the Illuminati; *Star Wars*; the NAACP; Burger King; his neighbor's Lil Wayne tattoos; Tupac; T-Mobile; Metro PCS; a fingernail found in his driveway; and the bag of the decedent's possessions. The State argues that "each of these so-called 'bizarre topics' arose rationally and reasonably in the course of Defendant's interview and provide[s] no substantial evidence of any inability of Defendant knowingly and intelligently to waive his constitutional rights."

{36}   As a preliminary matter, we note that the State's position here, even if proven, does not challenge all of the district court's factual findings upon which the court based its conclusion that Defendant lacked the requisite awareness to make a knowing and intelligent waiver. As discussed above, the court's factual findings in its written order included that throughout the interview Defendant "behave[d] erratically, [wa]s fixated on bizarre topics, [wa]s incapable of answering most, if not all, of [Acata's] questions[,] and repeat[ed] himself on a variety of unrelated topics[,] . . . [n]one of [which we]re remotely related to the conversation [Acata wa]s attempting to have with Defendant." The alleged rationality and reasonableness of the topics specified by the State, as discussed below, bear only on portions of the district court's findings. Accordingly, we presume the validity of the remainder of the district court's factual findings as entitled to our deference.

{37}   Under our standard of review, the State here bears the burden to show an absence of substantial evidence for the district court's finding that Defendant's varied topics in response to Acata's questions were "bizarre" and unrelated to her questions. To demonstrate the rationality and reasonableness of the specified topics, the State points to Defendant's discussing that "the big picture" included neighborhood gangs having workers driving taxi cabs and working at Burger King, McDonald's, and Metro PCS; that the Illuminati were a gang in his neighborhood affiliated with the Bloods; that "*Star Wars*" referred to a high level of computer technology that is imminent; that the NAACP president was his mentor; that his visits to Burger King were a basis for people in his neighborhood to know he had money; that Lil Wayne's tattoos were similar to those on his neighbor who allegedly had been watching him for the gang, and which reminded him of the title of Tupac's biopic *All Eyez On Me*; that a particular employee at the Metro PCS T-Mobile store was affiliated with the gang and had been to his residence, based on his finding one of her distinctive fingernails in his driveway; and that a bag containing the decedent's burglary tools, gloves, and GPS monitors was associated with the people who Defendant believed had been breaking into his house.

**{38}**     Applying deferential review, we find sufficient evidence to support the district court's finding that Defendant's various topics were bizarre and unrelated to Acata's questions. Merriam-Webster defines "bizarre" as "strikingly out of the ordinary: such as (a): odd, extravagant, or eccentric in style or mode; . . . (b): involving sensational contrasts or incongruities." https://www.merriam-webster.com/dictionary/bizarre (last visited April 30, 2021). Under this definition, the district court was reasonable in deeming Defendant's discussion topics bizarre, regardless of whether they seemed relevant to Defendant. We find the district court did not commit error in finding these topics strikingly out of the ordinary or odd or incongruous in relation to Acata's inquiry into the circumstances of the homicide. The State argues that these topics fit into a rational explanation of events *leading to* the events of that night, but the record demonstrates that Defendant repeatedly discussed these topics to the *exclusion of* directly answering Acata's questions about the facts and circumstances of the homicide. The State's position is further undercut by Rosenbaum's acknowledgement on cross-examination that Defendant's varied topics raised with Acata were presumptively "irrational."

**{39}**     For the foregoing reasons, we find that the district court's factual finding under the totality of the circumstances did not constitute clear error.

### 5.     The affirmed factual findings provide sufficient support for the district court's conclusions of law

**{40}**     The foregoing factual findings being affirmed, we find that the record provides sufficient evidence to reach the district court's conclusions of law: the State did not meet its burden to show a knowing and intelligent waiver, and Defendant lacked awareness of his rights and of the consequences he faced by abandoning those rights. First, Defendant did not make an express waiver, as the State does not contest. Second, Defendant's erratic behavior, his inability to answer Acata's direct questions about the circumstances of the homicide, and his repetition of off-topic subjects raise serious concerns as to his mental state under the totality of the circumstances. These concerns weigh against finding a valid waiver. Third, we indulge every reasonable presumption against waiver, *see Martinez*, 1999-NMSC-018, ¶ 14, including that Defendant was too fixated on off-topic subjects to intelligently consider his rights and the consequences of waiving them. Thus, we affirm the district court's conclusions of law.

### C.     The State's claim that Defendant made a knowing and intelligent waiver is precluded by our affirmance of the district court's conclusions

**{41}**     The State also argues that the Defendant made a "knowing, intelligent voluntary waiver of rights[.]" The State cites to *Martinez*, 1999-NMSC-018, ¶ 19, for the proposition that a valid waiver "need not be express, but may be determined implicitly from an evaluation of the facts and circumstances of the interrogation."

**{42}**     However, our foregoing analysis affirms the district court's conclusion that Defendant lacked the requisite awareness to make a valid waiver under *Fekete*, 1995-NMSC-049, ¶ 49 (citing *Moran*, 475 U.S. at 421). Defendant's lack of "full awareness of

both the nature of the right being abandoned and the consequences of the decision to abandon it" is dispositive, precluding the knowing and intelligent waiver claimed by the State. *See id.*

## III.   CONCLUSION

**{43}**   For the foregoing reasons, we affirm the district court's order suppressing Defendant's statements to law enforcement in the custodial interview.

**{44}   IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**